Antonio Claudio, representado por su padre, Miguel Claudio, demandante y apelado, *v.* Blas Delgado, demandado y apelante.

No. 5940.—*Sometido:* Enero 25, 1933. *Resuelto:* Marzo 17, 1933.

*A. L. López,* abogado del apelante; *R. A. Arroyo,* abogado del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Éste es un pleito sobre daños y perjuicios. Lo inició el demandante, menor de edad, representando por su padre, contra Blas Delgado, alegando que el 14 de septiembre, 1927, Bienvenido Báez, *chauffeur* del demandado, actuando como tal manejaba por la Carretera Central el automóvil P–323 del demandado transportando pasajeros en forma ilegal y negligente y a ello debido arrolló al demandante que marchaba por su derecha en el Km. 37 Hm. 3 de dicha carretera, produciéndole varias heridas que lo dejaron inconsciente teniendo que ser conducido a la sala de socorros y hallándose aún a la fecha de la demanda, noviembre 4, 1927, imposibilitado de

trabajar, sufriendo dolores físicos y morales y sometido a tratamiento médico.

Sostuvo el demandado por vía de excepción que la corte carecía de jurisdicción, que la demanda era incierta y que no aducía hechos suficientes para determinar una causa de acción. Cerca de dos años después la excepción fué declarada sin lugar. Contestó entonces alegando como primera defensa una negativa general de todos y cada uno de los hechos de la demanda; como segunda defensa que con anterioridad al 14 de septiembre, 1927, había vendido el automóvil de que se trata a José Esterás de Caguas; como tercera defensa que el 14 de septiembre, 1927, el auto de Esterás viajaba en dirección de Caguas a Cayey, y en dirección contraria y por el centro de la carretera venía un *truck* que no dió derecha al auto a pesar de haber éste tocado bocina y de correr a poca velocidad viniendo en ese entonces el demandante en dirección contraria al auto, abandonando su sitio de seguridad e invadiendo la derecha del auto, y como cuarta defensa que en la fecha en que ocurrió el accidente el auto se encontraba en poder de Báez a quien se lo había prestado su dueño Esterás.

Fué el pleito a juicio presentando ambas partes su evidencia. Apreciándola la corte declaró probados los siguientes hechos:

"Que el demandado, Blas Delgado, el 14 de septiembre de 1927, era dueño de un automóvil Chevrolet, P. 323, inscrito a su nombre en el Registro de Automóviles del Departamento del Interior de Puerto Rico, que el día 14 de septiembre de 1927 ese automóvil era guiado por Bienvenido Báez en la carretera que une a Caguas y Cayey, que al llegar cerca de Caguas, se encontró con tres jóvenes que se dirigían a pie, por la derecha que les correspondía en la misma carretera, hacia Caguas; que dicho automóvil, guiado a excesiva velocidad, sin tomar ninguna clase de precaución por la vida de los pasajeros, iba por la carretera, de tal manera que dos de los jóvenes tuvieron que brincar rápidamente hacia la cuneta, no dándole tiempo de hacerlo al demandante Antonio Claudio, quien fué arrollado en el momento en que el automóvil hacía un

zig zag; que en tal accidente, Antonio Claudio sufrió fuertes golpes en la cabeza, otro en el brazo izquierdo, otro en el brazo derecho y varias lesiones en la cara, apareciendo en su cuerpo las cicatrices de dichos golpes, entre las cuales se destaca una grande correspondiendo al golpe recibido en el lado izquierdo de la cabeza hacia la parte de la sien; que con motivo de dicho accidente, ocurrido exclusivamente por la negligencia de Bienvenido Báez, el demandante perdió momentáneamente el conocimiento, que recobró más tarde, cuando se encontraba recluído sujeto al tratamiento correspondiente, habiendo necesidad de que se le envolvieran las partes lesionadas con vendajes y habiendo expelido sangre por la boca a consecuencia de los golpes, que le afectaron en su salud y lo sometieron a las inconveniencias, molestias y dolores de las consiguientes curaciones.''

Y dijo además en su relación del caso y opinión:

''Declaramos probados estos hechos y estudiada la evidencia presentada por ambas partes a la luz de lo resuelto en los casos de *Sánchez* v. *Asiatic Petroleum Co.*, 40 D.P.R. 104, y de *Ramos de Anaya* v. *López*, 36 D.P.R. 500, no creyendo la corte la defensa del demandado al efecto de que el automóvil no le pertenecía y de que a la fecha del accidente, Bienvenido Báez era sólo un prestatario del automóvil, la corte entiende que los daños y perjuicios fueron sufridos por el demandante a consecuencia, única y exclusiva, de la culpa, por negligencia, del chofer del demandado, en el desempeño de sus funciones, siendo dicho demandado responsable de los expresados daños y perjuicios.

''Bien es verdad que no hubo declaración sobre el importe de éstos, pero no es menos cierto que la corte tuvo ante sí al demandado, oyó su declaración sobre los golpes recibidos y sus consecuencias y observó las cicatrices que presentaba a la fecha del juicio, en la cabeza, en la cara, en las manos. Afortunadamente se trataba en este caso de un joven de 18 años de edad, cuya vitalidad pudo haberle hecho recuperar más pronto de las dolorosas consecuencias del accidente, por lo que entiende la corte que una compensación de QUINIENTOS DÓLARES, ($500), es justa y razonable. La Corte opina que debe dictarse sentencia contra el demandado por dicha suma y ordena al Secretario registre sentencia de conformidad.''

Y así se dictó la sentencia en este caso en junio 1º, 1931, que apeló el demandado imputando a la corte de distrito tres errores cometidos el primero al no declarar que la negligencia del demandante fué la causa próxima del accidente, el se-

gundo al negar crédito a la evidencia del demandado demostrativa de que el auto no era de su propiedad a la fecha del accidente, y el tercero al fijar la indemnización en $500 cuando no se presentó evidencia de perjuicios.

■ El primer testigo que declaró por el demandante fué Ignacio Lizardi. Describe así el accidente:

"El día a que se refiere ese caso veníamos nosotros por la carretera de Cayey hacia el pueblo de Caguas, y venía el joven Antonio Claudio delante, yo detrás, y Pascual detrás, y yo sentí el llegar del carro que venía, y entonces me espanté, y nos tiramos Pascual y yo hacia la zanja, a la derecha, y entonces Antonio Claudio no se dió cuenta y ahí le dió el carro por la parte detrás, y le hizo así (haciendo un movimiento), y le dió y lo tiró a la zanja aquella en mis pies."

El auto era el P–323. Lo manejaba Báez. El *chauffeur* no dió aviso al acercarse. Se dió cuenta al mirar atrás y ya estaba encima. Los tres jóvenes caminaban a pie bien a la derecha. Para salvarse tuvo que tirarse a la zanja.

Repreguntado insistentemente se mantuvo en lo dicho. El abogado del demandado le pidió que explicara cómo fué que el auto arrolló al demandante. Contestó:

Pues como venía tan ligero, cuando nosotros caímos a la zanja, él no se dió cuenta y ahí el automóvil hizo un zig zag, así, (señalando), y le dió el cantazo."

Nada había en la carretera que hiciera que el automóvil tomara tanto su derecha. Cuando ocurrió el accidente el auto siguió de largo. Hubo que llamarlo para que recogiera al herido para llevarlo al hospital.

Se preguntó al testigo varias veces sobre si Báez había manifestado algo sobre el porqué manejaba el automóvil. Se opuso el demandado y la corte sostuvo su oposición. Entonces el demandante presentó en evidencia una certificación expedida por el Departamento del Interior el 4 de octubre de 1927 creditiva de que el auto P. 323 con el que se arrolló al demandante figuraba inscrito a nombre de Blas Delgado, de Caguas, desde noviembre 30, 1926.

Repetida la pregunta, el testigo contestó:

"Me dijo que no tenía que ver con eso, que se encargaba Blas Delgado de ese asunto."

Al recibir las heridas Claudio quedó inconsciente. Recobró el conocimiento por la noche, bien tarde.

El segundo testigo fué Antonio Disdier. Resume, en sus propias palabras, el accidente así:

"El día a que se refiere la denuncia yo venía por la carretera que conduce de Cayey a Caguas y venía con el joven Antonio Claudio e Ignacio Lizardi; veníamos de uno en fondo y de pronto salió un carro y nosotros al oír el ruido, miramos para atrás, y cuando miramos para atrás, el joven Antonio Claudio venía delante y nosotros íbamos detrás, miramos para atrás y al ver el automóvil que venía tan ligero, nos tiramos a la zanja cuando vimos el carro encima de nosotros, y a Antonio Claudio no le dió tiempo para oír y cuando el carro pasó, le dió así, porque parece que el *chauffeur* le hizo un movimiento al guía y el carro le dió a Antonio Claudio con la parte de atrás de la caja, y lo tiró a la cuneta."

El auto no tocó bocina. Ellos iban bien a la orilla derecha. La carretera estaba limpia. Ningún otro vehículo obstaculizó a Báez. Fué el ruido del carro el que le hizo mirar para atrás.

A la siguiente pregunta: "¿Qué hizo el *chauffeur* Báez cuando iban en el automóvil para el hospital?", contestó: "Seguimos y en el carro él dijo que no tenía que ver nada con el accidente, que el carro era de un tal Blas Delgado, y que Blas Delgado se encargaría de eso."

Repreguntado largamente se sostuvo en lo dicho.

Otro testigo, Bernardo Sánchez, venía más atrás y declara en igual sentido que los anteriores.

El propio demandante declaró:

"Que nosotros veníamos y yo era el de alante y cuando los muchachos hicieron así, yo viré de golpe, y no supe de más nada. . . . Pues venían Pascual Merced, que es amigo mío, e Ignacio Lizardi . . . Yo los ví que ellos brincaron así y cuando sentí un ruido detrás de mi que fuí a mirar, no supe de más nada. . . . Yo cuando des-

perté me estaban poniendo gorros de hielo; y me ví esta mano vendada y aquí vendado también. . . . Éste de la cabeza y en el lado izquierdo.''

Describe las heridas que recibiera mostrando las cicatrices y dice que ha quedado un poco sordo, que cuando se baja se marea, bota sangre por la boca, no se siente como antes, ''me siento así como aturdido.'' Cuando lo arrollaron tenía como diez y seis años. Al declarar como diez y ocho.

Fué llamado entonces el padre del demandante. Describe cómo encontró a su hijo el 14 de septiembre de 1927 y cómo ha quedado. Recuerda que ese día llegó el demandado con ''Don Juan'' y éste le dijo en presencia del demandado: ''Que tuviera calma, que no me apurara, que ellos me darían doscientos cincuenta pesos.''

Su hijo estuvo curándose en la clínica del Dr. Mercado como diez y siete días. Agregó: ''Yo compré vendajes, y algunas cosas así; pero tenemos además muchos gastos, porque me han pasado recibos y don Blas se comprometió a pagar los gastos.''

La prueba del demandado consistió en su propia declaración y en el documento a que nos referiremos luego. Declarando dijo que a la fecha del accidente el auto P–323, era de José Esterás. El testigo, sin embargo, aparecía como dueño en el Departamento del Interior. Compró el auto en venta condicional y no le aceptaron que lo pasara a Esterás, a quien se lo había vendido.

El documento es una certificación del Tesorero de Puerto Rico expedida el 11 de septiembre de 1930 creditiva de que en el reparto contributivo de Caguas 1927–28, aparece José Esterás como contribuyente por un auto licencia No. 8580 valorado en $200.

Además de la certificación expedida en 4 de octubre de 1927 a que antes nos referimos el demandante presentó otra de igual origen de la que aparece que el auto P–323 1927–28, licencia 8580, quedó registrado a nombre de Blas Delgado hasta diciembre 16, 1928, en que fué traspasado a José Esterás.

A nuestro juicio ninguno de los errores señalados fué cometido.

La prueba sobre la forma en que ocurrió el accidente no fué ni siquiera contradicha y es bastante. Invoca el apelante en su favor el caso de *Rivera* v. *Graham,* 34 D.P.R. 1, y *Meléndez* v. *Alvarez,* 35 D.P.R. 343, y dice:

"De acuerdo con las precedentes autoridades, un automóvil que está pasando a otro, o a una persona, no está obligado a dejar a su derecha más espacio del necesario a fin de evitar un choque con el carro o persona que va delante. Y que el conductor de un automóvil tiene derecho a asumir al pasar delante a una persona que está en lugar seguro, que ésta no dejará repentinamente su sitio y se colocará en el paso del vehículo."

Los casos no son aplicables. Aquí la prueba revela que los tres jóvenes caminaban delante, por la orilla de la carretera, el demandante Claudio el primero, detrás Lizardi y tras Lizardi, Pascual. El auto corría velozmente y no avisó que iba a pasar. Pascual y Lizardi sintieron el ruido del carro y apenas tuvieron tiempo para saltar a la zanja de la cuneta a fin de salvarse. Menos afortunado Claudio no se dió cuenta exacta de lo que sucedía y al volverse hacia atrás sin variar de sitio fué arrollado por el auto y herido.

Los jóvenes iban por la carretera en el ejercicio de su derecho como parte que eran del público. También iba por la carretera en el ejercicio de su derecho el auto guiado por Báez. Los derechos de los ciudadanos son armónicos y si Báez quería pasar a los que caminaban delante estaba obligado a respetar su derecho ejercitando el suyo sin violar el de los demás. Podía pasarles. Lo natural es que les pasara. Ellos andaban, él corría en una máquina. Pero debió hacerlo tomando las necesarias precauciones. La misma ley las fija. "Las personas que manejen vehículos de motor en los caminos públicos," dice el artículo 12 letra "*a*" de la Ley para reglamentar el uso de vehículos de motor en Puerto Rico y para otros fines, de 1916, (Leyes de 1916, p. 144), "deberán, en todo tiempo, ejercer el debido cuidado

y tomar precauciones razonables para garantizar la seguridad de vidas y propiedades." Y agrega en la letra *"e"* de dicho artículo: "Cuando se dé alcance a otro vehículo o persona siempre deberá darse aviso, y la persona o vehículo de menor velocidad deberá echarse a la derecha, tanto como le fuere posible, y el vehículo que dé alcance pasará siempre por su izquierda."

. No ya yendo como iban los jóvenes en este caso, según demuestra la prueba, por la orilla derecha de la carretera, debieron ser avisados. Aunque hubieran ido caminando indebidamente por el centro, no hubiera podido el auto pasarles arrollándolos sin darles aviso. La infracción que puedan cometer los viandantes saliéndose del espacio designado para ellos a orillas de las carreteras, no puede castigarse por el viajero en máquina que les siga arrollándolos violentamente.

No hay en este caso el más leve motivo de justificación para la actuación del *chauffeur* del demandado. Una negligencia criminal es la que revelan sus actos.

Tenía derecho a correr por su derecha. No sólo tenía derecho, era su deber dirigir por ese lado el auto que guiaba. Pero antes que él ocupaban esa derecha los jóvenes viandantes y si quería pasarles debió haber actuado de acuerdo no sólo con la ley sino con los más rudimentarios principios de respeto a la personalidad humana.

Se trataba de un auto público. De acuerdo con la ley y la jurisprudencia su dueño era responsable de los actos de su *chauffeur* realizados como lo fueron en este caso en el ejercicio de sus funciones. Al reconocerlo así la corte de distrito no cometió error alguno.

Con respecto a la propiedad del vehículo, la evidencia fué contradictoria. Quizá en verdad el demandado había vendido a Esterás el auto y era Esterás el verdadero dueño a la fecha del accidente, pero es lo cierto que la evidencia aportada por el demandante era suficiente para demostrar que el auto pertenecía aún al demandado y la evidencia presentada por éste para demostrar lo contrario no es conclu-

yente. La corte pudo resolver como resolvió el conflicto en contra del demandado y como no se ha demostrado que al actuar así lo hiciera por pasión, prejuicio o parcialidad o que cometiera algún error manifiesto, debe prevalecer su conclusión.

En cuanto a los daños, es cierto que no se presentó evidencia específica de los mismos, pero la general aportada es suficiente para sostener una suma como la fijada por la corte. El demandante quedó inconsciente. Sufrió graves heridas, una de ellas en la cabeza. Estuvo curándose unos diez y siete días en una clínica. Más de dos años después, a la fecha del juicio, aún sufría a consecuencia del accidente. ¿Qué menos que $500 pueden fijarse como indemnización en un caso semejante?

*Debe confirmarse la sentencia recurrida.*