GUILLERMO CRUZ, demandante y apelado, *v.* WHITE STAR BUS LINE, INC., demandante y apelante.

No. 6397.—*Sometido:* Enero 8, 1934. *Resuelto:* Abril 3, 1934.

*C. Iriarte* y *F. Fernández Cuyar,* abogados de la apelante; *J. Valldejuli,* abogado del apelado.

El Juez Presidente Señor Del Toro, emitió la opinión del tribunal.

Este es un caso de daños y perjuicios reclamados con motivo de cierto accidente. Se falló en favor del demandante en marzo 7, 1933. No conforme la demandada, apeló para ante esta Corte Suprema. La transcripción se radicó en junio de 1933. En julio siguiente la parte apelada solicitó que se desestimara por frívolo el recurso. Se opuso la apelante en una moción bien razonada y la corte declaró no haber lugar a la desestimación. La transcripción consta de más de 230 páginas y la moción de oposición demostraba, al parecer, un caso digno de estudio.

Solicitó la apelante varias prórrogas para la presentación de su alegato que le fueron concedidas. Se opuso el apelado a la concesión de nuevas prórrogas y el alegato fué finalmente radicado en octubre 9, 1933, y en diciembre 7 siguiente volvió el apelado a solicitar la desestimación del recurso por frívolo, impugnando extensa y cuidadosamente cada uno de los errores señalados por la apelante.

Ambas partes fueron oídas en enero 8 último sobre los méritos de la moción que envuelve los del recurso, y si éste no se decide ahora definitivamente, quizá no pueda señalarse de nuevo para verse en su fondo hasta el término de noviembre, 1934, o el de enero, 1935.

Siendo ello así, ilustrados como hemos sido en dos ocasiones por los informes de los abogados de ambas partes, planteadas todas las cuestiones por la apelante en su alegato e impugnadas por el apelado en su moción, estando ante nos-

otros completa la transcripción, y habiendo tenido que hacer el estudio de la totalidad del caso, estudio que nos ha llevado a la conclusión de que la sentencia apelada debe confirmarse, así lo decidiremos. Depuradas todas las cuestiones que el apelante suscita, el recurso resulta frívolo en verdad.

██ El primer error se señala como sigue:

"Cometió error manifiesto, y actuó con pasión, prejuicio y parcialidad, la corte inferior al apreciar la prueba practicada por las partes, y declarar que 'la teoría del demandante es la más plausible y la más probable,' y que 'la conducta del chauffeur de la demandada fué la causa eficiente del daño'."

En la relación del caso y opinión que sirve de base a su sentencia, declaró probados el juez de distrito los siguientes hechos:

"Guillermo Cruz, comerciante y vecino de Río Piedras, demanda a The White Star Bus Line, Inc., que es una corporación organizada de acuerdo con las leyes de Puerto Rico dedicada al transporte de pasajeros en guaguas u ómnibus entre San Juan y Río Piedras, en reclamación de la suma de $15,600.00 por vía de indemnización de daños y perjuicios, como consecuencia de lesiones recibidas en el brazo izquierdo mientras viajaba como pasajero en una de las guaguas de la demandada.

"Allá por el 8 de diciembre de 1931, como a las 7 de la noche más o menos, el demandante tomó en Río Piedras con dirección a San Juan y en calidad de pasajero, pagando el pasaje, la guagua de la demandada P–29, que era manejada por el chauffeur Juan Martínez, quien allí y entonces se encontraba en el desempeño de sus deberes como empleado y en beneficio de la demandada, y por la parada 37 de dicho trayecto de Río Piedras a San Juan, hubo un choque o rozamiento entre dicha guagua y el truck C–1171, guiado por Pablo Rivera, que caminaba en dirección contraria, o sea de San Juan a Río Piedras, recibiendo el demandante varias contusiones, consistentes en fracturas por tres partes del brazo izquierdo y fragmentación de los huesos de dicho brazo.

"La evidencia del demandante, consistente en las declaraciones de Guillermo Cruz, Dr. Basilio Dávila, Marcelo Clemente, Pablo Rivera, Leocadio Márquez, Vicente Machuca y Juan Félix Fuentes, ha tendido a demostrar que desde que salió de Río Piedras en dirección a San Juan la guagua de la demandada, guiada por el re-

ferido chauffeur Juan Martínez y que conducía muchos pasajeros, corría a exagerada velocidad y sobre lo cual se le llamó la atención por varios pasajeros; que por dos o tres ocasiones la guagua trató de pasar a un carro turismo que iba delante, guiado éste por Juan Félix Fuentes y quien caminaba bastante ligero, de 30 a 35 millas; que al llegar por la parada 37, Hato Rey, el automóvil seguía caminando delante de la guagua, acelerando la marcha para no dejarse pasar por aquélla, mientras que en dirección opuesta se aproximaba el truck guiado por Pablo Rivera y al tratar de pasar la guagua al carro turismo, se echó al centro de la carretera en forma tal que, no teniendo espacio suficiente, se encontró con el truck e hizo que el lado izquierdo de la guagua chocara o rozara con el lado izquierdo del truck; que en ese momento gritó una señora que iba con su esposo en un asiento delantero, y el demandante, que estaba sentado en el tercer asiento izquierdo de la guagua, se levantó súbitamente y se agarró a uno de los pilares o varillas de la barandilla izquierda de la guagua al tiempo que cruzaban ambos vehículos, recibiendo primeramente una herida en el dedo índice de la mano izquierda y luego la fractura de la muñeca y como no pudo sacar el brazo, se le fracturó también el antebrazo y el húmero; que el truck iba por su derecha y despacio; que la guagua no paró cuando el accidente sino que continuó su marcha y como dos paradas más adelante viró y llevó el herido a Río Piedras, primero al hospital municipal y luego a la Clínica Pereira Leal, y que allí quedó recluído y se le atendió por espacio de 25 ó 30 días por los Dres. Pereira Leal y Basilio Dávila y después estuvo yendo diariamente a curarse por espacio de 2 ó 3 meses y quedando incapacitado en un 75 a 80% de las funciones del brazo izquierdo.

"La evidencia de la demandada, por las declaraciones de Juan Martínez, Ana María Ayala de Pagán, Jacinta Vega, Marina Billour (sic), Ramón Delgado, José Olavarrieta y Gabriel Hernández, ha tendido a demostrar, que la guagua caminaba a pequeña velocidad, poco a poco, de 12 a 15 millas, y por su derecho; que delante de la guagua, en dirección de Río Piedras a San Juan, venía el carro turismo, a una distancia de 12 a 15 metros, y de San Juan para Río Piedras iba el truck; que el carro turismo cruzó al truck que caminaba por el centro de la carretera, y entonces dicho truck se desvió hacia la guagua, rozando ambos vehículos de la mitad de las cajas para atrás; que Guillermo Cruz iba en el tercer asiento del lado izquierdo, llevando el brazo recostado a lo largo de la ventanilla pero sin sobresalir fuera según la testigo Marina Billour o con la

mano en la cabeza y el codo en la barandilla y sin llevarlo por fuera porque le hubiera llamado la atención según el chauffeur Juan Martínez, y que al rozar los dos vehículos la guagua dió un *sacudeón,* la señora de don Ramón Delgado gritó, y Guillermo Cruz gritó también diciendo: 'Ay mi madre' y resultándole fracturado el brazo izquierdo; que la guagua siguió más adelante hasta encontrar un sitio para virar y regresó a Río Piedras llevando al herido al hospital; que la rozadura fué pequeña, por el lado exterior izquierdo de la guagua, teniendo ésta en su interior un letrero que decía que la compañía no era responsable en caso de accidentes ocasionados a los pasajeros al sacar la cabeza o brazos por fuera de las ventanillas; y que el demandante fué el único pasajero que en ese accidente fué lesionado.

"La evidencia es contradictoria, como ocurre generalmente en casos de daños y perjuicios por accidentes en el manejo de vehículos de motor. La teoría del demandante es la más plausible y la más probable. La colisión fué una rozadura o *raspaso* entre la guagua y el truck por el lado izquierdo de ambos vehículos, debido a la negligencia del chauffeur de la guagua al tratar de pasar al carro turismo, yendo en disputa o regateo con éste a una velocidad mayor que la permitida considerado el ancho y tráfico del camino, pues al cruzarse con el truck el espacio resultó insuficiente, yendo este último vehículo por su derecha.

"Con excepción del chauffeur Juan Martínez, quien en el examen directo dijo que Guillermo Cruz tenía el brazo por fuera de la barandilla o la mano en la cabeza y el codo en la barandilla, mientras que en el examen de repreguntas expresó que no le vió llevar el codo por fuera de la barandilla porque le hubiera llamado la atención, ningún otro testigo manifestó, lo que es materia de defensa de la demandada, de que el demandante llevara el brazo por fuera de la ventanilla del asiento que ocupaba, pues Marina Billour declaró meramente que el demandante llevaba el brazo recostado sobre la ventanilla, hacia dentro de las barandillas de hierro, y 'como muchas veces acostumbramos llevarlo'; sin que ello implique negligencia en el pasajero que, en caso de accidente por la negligencia del conductor, le impida recobrar."

Argumentando el error dice la apelante en su alegato:

"La prueba fué contradictoria en los extremos esenciales del caso. Era necesario y lógico, por tanto, en orden a dirimir justa e imparcialmente tal conflicto, recurrir, primero a los hechos en que

estuvieron de acuerdo todos los testigos, de ambas partes, y segundo a los hechos físicos incontrovertidos, prueba ésta que, de acuerdo con los principios fundamentales de evidencia, debe tener más valor probatorio que cuantas declaraciones testificales se presenten para desvirtuarla. (Véase Groth vs. Thomann, 110 Wis. 488, 496; 86 W. W. 178, 181)."

Y seguidamente expone que todos los testigos estuvieron contestes en que la colisión fué una mera rozadura, en que viajando en la guagua muchos pasajeros, sólo uno resultó lesionado y en que la rozadura no ocurrió estando paralelos los tres vehículos sino cuando el carro de turismo iba delante de la guagua. Sostiene que esas circunstancias debieron necesariamente llevar a la corte a dirimir el conflicto de la evidencia en contra del demandante.

No estamos conformes. La rozadura pudo ser leve, pero es un hecho que no puede ni siquiera discutirse que fué la que ocasionó las lesiones al demandante. El que otros pasajeros no recibieran lesiones sí que puede admitirse que se debiera a la levedad del choque, pero ello no destruye el hecho de que el demandante pudiera ser lesionado en la forma en que alegó y la corte sentenciadora declaró probado que lo fué. Y el hecho de que el roce entre la guagua y el *truck* tuviera lugar antes de que la guagua pasara al carro de turismo, no quiere necesariamente decir que no se debiera al acto imprudente del *chauffeur* de la guagua al querer pasar a dicho carro.

■ Nada revela pasión, prejuicio o parcialidad por parte de la corte sentenciadora. Ninguna circunstancia física se ha puesto de manifiesto por la apelante que demuestre como una consecuencia ineludible que dicha corte apreciara la prueba erróneamente.

■ El segundo señalamiento es como sigue:

"Erró la corte sentenciadora al decidir y establecer, como cuestión de derecho, que el demandante no fué negligente al llevar el brazo recostado sobre la ventanilla de la guagua."

Cita al discutirlo la apelante un buen número de decisio-

nes de tribunales y algunos autores para sostener que cuando un pasajero viaja con el brazo fuera de la barandilla, especialmente cuando el conductor lo prohibe por medio de una regla que se anuncia en sitio visible del vehículo, y ocurre un accidente al pasajero, debe considerarse a éste como culpable de negligencia contributoria, y en tal virtud carente de derecho para reclamar contra el dueño del vehículo aunque el *chauffeur* del mismo hubiera sido también negligente al conducirlo.

Corpus Juris resume la jurisprudencia sobre la materia así:

"Es regla prevaleciente que constituye negligencia *per se* que un pasajero de un ferrocarril voluntaria o inadvertidamente saque el brazo, mano, codo o cualquier otra parte de su cuerpo por la ventanilla de un tren en movimiento más allá del borde exterior de la ventanilla, o de la superficie externa del carro a fin de ponerse en contacto con objetos u obstáculos que estén cerca de la vía, y que no se puede obtener indemnización alguna por lesiones que a no haber sido por tal negligencia no hubiesen surgido. Pero según algunas autoridades la cuestión de si un pasajero es culpable de negligencia contribuyente al comportarse en esta forma mientras el tren va en movimiento y al recibir lesiones a causa de tal hecho deberá ser determinado por el jurado de conformidad con todas las circunstancias del caso. No constituye negligencia que un pasajero se siente con el codo en el alféizar de la ventanilla estando ésta abierta, sin sacarlo fuera del carro, aunque a consecuencia de cualquier sacudida o brinco se le lance el brazo fuera y sufra lesiones. En cuanto a tranvías urbanos, la regla es menos estricta en lo que se refiere a tener el codo o brazo por fuera, o a estar agarrado a los postes de un tranvía abierto, etc., que cuando se trata de ferrocarriles corrientes, y se ha resuelto generalmente que no constituye negligencia *per se* el hacerlo así, sino que es cuestión de hecho que depende de las circunstancias del caso." 10 C. J. 1139.

Aceptando que la misma regla se aplique a guaguas destinadas al transporte público de pasajeros, veamos cuáles fueron las circunstancias que concurrieron en este caso concreto.

Después de declarar probados los hechos que dejamos

transcritos hizo mención la corte sentenciadora de alguna jurisprudencia y continuó expresándose como sigue:

"La conducta del chauffeur de la demandada fué realmente la causa eficiente del daño. El demandante no fué negligente, pues no puede considerarse como tal, bajo las circunstancias del caso, el hecho de llevar el brazo recostado sobre la ventanilla y agarrarse a las barandillas o pilares, para lo cual tenía necesariamente que extender la mano hacia fuera, cuando por la negligencia del chauffeur de la demandada, sin la cual el daño no hubiera ocurrido, se produjo la conmoción o sacudimiento del vehículo, el grito de un pasajero, y el choque o rozamiento de los dos vehículos.

"No es éste el caso en que un pasajero asume voluntariamente una posición de peligro, que no toma las precauciones propias de un hombre prudente y razonable para evitar un daño, o que el perjuicio se deriva directamente de su propio descuido o negligencia, que le impida reclamar por lesiones sufridas; ni queda relevada de responsabilidad la compañía, en casos como el presente, por el hecho de haber fijado en su vehículo el letrero prohibiendo a los pasajeros sacar la cabeza o brazos por fuera de las ventanillas."

Analizada la evidencia, no demuestra a nuestro juicio que el demandante viajara con el brazo fuera. Refiriéndonos a las dos declaraciones que pudiera considerarse que favorecen más a la demandada, las de sus testigos Juan Martínez y Marina Brillón, encontramos que el primero que era el que guiaba la guagua en que viajaba el demandante, en el interrogatorio directo se expresó así:

"A.—¿Usted nos puede describir la posición en que estaba en ese asiento —T.—Yo lo ví en esta posición.—A.—¿Encima de qué tenía ese brazo?—T.—No me fijé si iba encima de la varilla o hacia fuera de la . . .—A.—(Int.) ¿Usted no se fijó?—T.—No, señor.— A.—¿Pero usted sabe si ese brazo iba dentro de la guagua, o encima del respaldar del asiento, o fuera de la guagua, descansando sobre las varillas de la guagua?—T.—Dentro de la guagua no iba.—A.—¿Usted está seguro de eso?—T.—Sí, señor.—A.—¿Por qué está seguro de eso?—T.—Porque lo noté con la cabeza que yo creí que venía un poco dormido, guayado; ví que venía dormido en la guagua."

Pero ese mismo testigo en el trámite de repreguntas se produjo como sigue:

"A.—Entre las barandas esas de hierro que están a los lados y el hueco, o el borde de la ventana, no se puede recostar el codo. . . —T.—(Int) Sí, pero queda uno derecho.—A.—¿Usted vió que el codo del señor Cruz fuera por fuera? Que usted lo viera.—T.—Si lo veo le llamo la atención.—A.—¿Entonces cuando usted lo vió que estaba recostado, usted no vió que llevara nada por fuera?—T.—Por eso le dije, que no lo había notado.—A.—Pero si hubiera ido por fuera usted le llama la atención, ¿no es así? Si hubiese llevado el codo o el brazo por fuera, usted le hubiera llamado la atención al verlo?—T.—Si lo veo le llamo la atención."

Y que la testigo Brillón declaró en el interrogatorio directo:

"A.—Explíquele a la Corte lo que usted vió?—T.—Yo venía en la guagua por Hato Rey y pasó un truck muy ligero y rozó con la guagua. Yo noté que le hirió un brazo al señor Guillermo Cruz; lo llevaba recostado de la ventanilla.—. . .—T.—Cuando el truck rozó con la guagua el señor Guillermo Cruz, que llevaba el brazo recostado de la ventanilla, recibió un golpe muy fuerte en el brazo.—. . .—A.—¿Usted había visto al señor Cruz antes del accidente?— T.—Sí, señor.—A.—¿Y le había visto el brazo recostado de la ventanilla?—T.—Sí, señor, lo llevaba recostado de la ventanilla.—. . . —A.—Y a usted qué le pasó con motivo de ese choque?—T.—Solamente que me asusté porque no faltó nada para la guagua irse a la cuneta."

Y a repreguntas del abogado del demandante:

"A.—¿Había espacio donde recostarlo que no saliera el brazo?— T.—Había. Él lo puso en la ventanilla como muchas veces acostumbramos.—A.—Póngalo usted en ese sitio. Y fuera de esa barandilla había una cosa de hierro, ¿verdad?—T.—Sí, señor.—A.—¿Y él tenía entre el hierro y el marco de la ventanilla recostado el brazo? ¿En esta forma?—T.—Sí, señor.—A.—¿Así? ¿En línea recta en la barandilla?—T.—Sí, señor.—A.—¿No fuera de la barandilla?—T.—En la barandilla dije que lo traía."

Con la evidencia practicada en este caso como base, no cabe aplicar la jurisprudencia que invoca la apelante.

■ Por el tercer señalamiento se sostiene que la corte erró al fijar la indemnización en $2,450 y por el cuarto y último que también erró al imponer las costas a la demandada.

Oigamos otra vez a la corte sentenciadora explicando las razones de su fallo. Dice:

"La evidencia demostró que el demandante sufrió mucho como consecuencia de las fracturas de su brazo izquierdo, que no puede cerrar la mano, ni doblar el brazo, estando el codo fuera de sitio, y que está incapacitado en un 80% de las funciones del brazo.

"El demandante trabajaba como primer dependiente de comercio con su cuñado Julio Rivera Mojica, en Río Piedras, donde percibía un sueldo mensual de $60.00, más un 33% en los beneficios; y después del accidente ha continuado prestando servicios en la tienda, aunque no en las mismas condiciones que antes, debido a su incapacidad parcial permanente en las funiones de la mano izquierda y recibe por ello compensación consistente en sus alimentos y vestidos, que tienen un valor de $35.00 a $50.00 por mes. Para determinar los beneficios que el demandante declaró eran de $90.00, o sea más que el sueldo, no existe base cierta para determinarlos.

"En la Clínica Pereira Leal, de Río Piedras, donde el demandante fué hospitalizado, depositó $50.00, cobrándosele $5.00 por día; más debe satisfacer $200 al Dr. Basilio Dávila, por sus servicios médicos y atención durante dos meses, incluyendo el trabajo de cuatro placas radiográficas, y $200.00 al Dr. Pereira Leal, quien también le asistió. Las sumas dadas a las enfermeras en concepto de propinas o regalos no pueden recobrarse. Sobre lo pagado por medicina no hubo evidencia.

"Por los dolores físicos, morales, y angustias sufridas por las lesiones, así como por la incapacidad parcial permanente en las funiones del brazo izquierdo en un 75 a 80%, no estando el lesionado inutilizado totalmente para el trabajo de dependiente de comercio, pues conserva el uso de la mano derecha, la corte señala una indemnización de $2,000.00, más $450 por gastos de atención médica y clínica."

Las circunstancias concurrentes tales como se exponen por la corte sentenciadora surgen de la evidencia practicada y justifican la suma fijada como indemnización.

En cuanto a las costas, se impusieron debidamente. El demandante se vió obligado a recurrir a los tribunales para reclamar la indemnización. La demandada negó la negligencia imputada a su *chauffeur* e imputó a su vez negligencia al demandante y sometido el caso al crisol de un juicio

celebrado ante una corte de justicia, ésta dió sin vacilaciones la razón al demandante. La imposición de las costas al demandado que sin razón hizo que se causaran, era lo justo.

*No habiéndose cometido los errores señalados, ni existiendo posibilidad alguna de que pueda revocarse la sentencia recurrida, procede la desestimación del recurso contra la misma interpuesto.*