Eva Ramos Gómez, demandante y apelada, *v.* Pedro García y Great American Insurance Co., demandados y apelantes.

Núm. 8786.—*Sometido:* Julio 6, 1943. *Resuelto:* Julio 21, 1943.

*Hugh R. Francis* y *Federico J. Pérez Almiroty,* abogados de los apelantes; *Celestino Iriarte, F. Fernández Cuyar* y *H. González Blanes,* abogados de la apelada.

Eʟ Juez Asociado Señor Snyder emitió la opinión del tribunal.

El 30 de noviembre de 1941 la demandante Eva Ramos iba de paseo con Rafael Rodríguez en su motocicleta de dos asientos. Él guiaba la motocicleta y ella iba sentada en el asiento trasero. Los acompañaban otras dos parejas paseando de igual manera en motocicletas. Como a las cinco de la tarde, en el viaje de regreso, la motocicleta de Rodríguez estaba estacionada, en dirección a San Juan, cerca de la Destilería Brugal, esperando por una de las motocicletas que aparentemente se había quedado sin gasolina. Mientras la demandante y Rodríguez estaban sentados en la motocicleta, con los pies en la carretera para guardar el equilibrio, una guagua, propiedad del codemandado García, venía en la misma dirección—es decir, hacia San Juan. Cuando la guagua se acercó a la motocicleta, apareció un automóvil privado, que venía en dirección opuesta; es decir, de San Juan a Bayamón. Creyendo aparentemente que podía pasar por el espacio que había entre el automóvil que venía y la motocicleta estacionada, el chófer de la guagua continuó su marcha a una velocidad excesiva sin tocar su bocina. La parte trasera derecha de la guagua chocó con la motocicleta, lanzando a Rodríguez y a la demandante al fangal que había al lado

de la carretera, lesionándolos, quedando la demandante sin conocimiento.

La corte inferior resolvió que el chófer de la guagua había sido negligente "(a) en tratar de pasarle a la motocicleta en los momentos en que se acercaba por el lado opuesto de la carretera otro vehículo, lo que le obligó a pasar tan cerca de la motocicleta que al enderezar la guagua para continuar su marcha por la carretera chocó con aquélla, dando violentamente con su parte trasera derecha en el manubrio izquierdo de la motocicleta; (b) en no reducir la velocidad de la guagua al pasar a la motocicleta y (c) al no tocar "klaxon" para avisar al conductor de la motocicleta que iba a pasarlo". Como consecuencia se dictó sentencia a favor de la demandante como sigue:

| | |
|---|---:|
| Honorarios médicos (Dr. Casanova) | $200.00 |
| Honorarios médicos (Dr. del Toro) | 2.50 |
| Por lesiones recibidas y dolores físicos y mentales sufridos | 2,500.00 |
| Por pérdida en capacidad para trabajar | 500.00 |
| | $3,202.50 |

También se concedieron a la demandante honorarios de abogado en la suma de $150 y las costas. Los demandados apelaron de esta sentencia, habiendo la demandante radicado una moción para que se desestimara el recurso por frívolo.

 Los demandados hicieron poco esfuerzo para contradecir la prueba que establece los hechos arriba mencionados. A lo sumo los demandados intentaron probar que Rodríguez acababa de poner en marcha su motocicleta y la había lanzado contra la guagua. Pero esta prueba no mereció crédito a la corte de distrito, y la prueba creída por ésta sostiene ampliamente la sentencia. En un caso algo parecido, este Tribunal resolvió—citamos del sumario—"Cuando debido a la imprudencia del *chauffeur* de una guagua al pretender pasar a otro vehículo en el momento en que un *truck* viene en dirección contraria, la guagua roza con el *truck* y se ocasionan lesiones a un pasajero de la guagua, tal rozadura, por leve que sea, es fuente de obligaciones." (*Cruz* v. *White*

*Star Bus Line, Inc.,* 46 D.P.R. 435). Véase también, *Claudio* v. *Delgado,* 44 D.P.R. 753.

Los demandados hacen hincapié en el punto de que la demandante y Rodríguez viajaban en el curso de una empresa común cuando ocurrió el accidente, y que por tanto la negligencia de Rodríguez debe imputarse a la demandante. Es bastante dudoso que la doctrina de empresa común sea aplicable a los hechos del presente caso (véanse *López* v. *American Railroad Co.,* 50 D.P.R. 1, 25; *Pacheco* v. *Pomales,* 55 D.P.R. 341; *Príncipe* v. *American R. R. Co. of P. R.,* 22 D.P.R. 302). Pero no es necesario que resolvamos dicha cuestión, toda vez que la corte inferior resolvió que Rodríguez no fué negligente, y no encontramos razón para alterar dicha conclusión. Por tanto, no llegamos al punto de imputar a la demandante la negligencia de Rodríguez.

Los otros errores son igualmente frívolos. No fué impropio conceder honorarios profesionales ascendentes a $200 a un doctor que trabaja en un hospital público (*Vega* v. *American Railroad Co. of Porto Rico,* 57 D.P.R. 376). Y la corte de distrito no cometió error al conceder a la demandante honorarios de abogado, simplemente porque la reclamación de la demandante excedía un tanto de la cantidad de daños que en realidad se concedieron (*Mercado* v. *American R. R. Co. of P. R.,* 61 D.P.R. 228).

Los demandados se quejan finalmente de la concesión de $2,500 como daños y de $500 por pérdida de su capacidad para trabajar. Las lesiones recibidas por la demandante, como correctamente se describen en su moción de desestimación, que se copia en parte en la nota al margen,(1) fueron de tal naturaleza que no encontramos abuso de la discreción

---

(1) ''La demandante era una costurera que se ganaba de diez a doce pesos semanales en su oficio, y éste requiere esencialmente el uso de sus brazos. Ella sufrió una de las fracturas más complicadas y difíciles, una fractura conminuta del tipo espiral en la cabeza quirúrgica del húmero izquierdo, una fractura perifragmental, es decir, que el hueso se rompió en varios fragmentos. Sufrió lo indecible durante mucho tiempo, asegurando el Dr. Casanova Díaz, quien es especialista en cirugía y jefe de la división de cirugía del Hospital de Distrito de Bayamón, que puede decir *seguro* que esa clase de fracturas duele mucho.

conferida a la corte inferior a este respecto. Véase *Font* v. *Viking Construction Corp.*, 58 D.P.R. 689; *Torres* v. *Fernández,* 56 D.P.R. 482, 496.

*La moción para que se desestime el recurso por frívolo será declarada con lugar.*

Los Jueces Presidente Sr. Del Toro y Asociado Sr. Travieso no intervinieron.

'Realmente fué un problema', declaró el médico. (Trans. de Evid., pág. 24). Se le puso un 'splint' de metal, un triángulo formado de metal que ajustaba al cuerpo, 'una férula ajustable en forma de triángulo' amarrado al cuerpo por medio de correas, y este tormento lo tuvo que soportar durante cinco semanas, amarrado con correas alrededor del pecho y por encima del hombro, sin poder dormir ni moverse, y causándole un dolor penetrante porque había 'que tratar de traer las partículas de hueso que hay sueltas'. (Trans. de Evid., pág. 26). El accidente le ocasionó una conmoción cerebral que a su vez le causó grandes vómitos. Sufrió también una gran contusión en la cabeza, en la región temporal izquierda, y una herida de pulgada y media en el cráneo. También sufrió una muy fuerte contusión en el ojo izquierdo que le produjo hemorragia y gran inflamación, además de dolores fortísimos de cabeza, y aun el día antes del juicio se le notaba todo el ojo amoratado. (Trans. de Evid. pág. 31). En cuanto al brazo, aseguró el médico que ahora no está en las mismas condiciones que antes del accidente, aunque su posición fisiológica no ha sufrido cambio, diciendo además que en una persona de la edad de la demandante (37 años) una fractura de esa índole tiene peores consecuencias que en una joven.

"La demandante declaró que aun en la actualidad no ve bien por su ojo izquierdo, que tiene que fijar y forzar demasiado la vista, y que antes del accidente veía perfectamente bien por su ojo izquierdo. En su oficio tiene que coser mucho a máquina, para lo que tiene que forzar mucho la vista, cosa que antes hacía sin temor ni inconveniente algunos, pero ahora ello le produce dolor de cabeza y en el cerebro, no pudiendo en consecuencia coser ni una cuarta parte de lo que antes cosía. Antes se ganaba de diez a doce pesos semanales, ahora tan sólo de tres a cuatro pesos por semana.''