ployed Zittel & Sons to procure the loan. So far as appears, Zittel & Sons acted solely as brokers or agents of the defendants. I suppose the defendants could agree to pay Zittel & Sons any sum as compensation for their services in procuring the loan, and the allegation that the money exacted by Zittel & Sons as a condition for obtaining this loan was paid to the plaintiff or to Zittel & Sons, being in the alternative, was not an allegation that the plaintiff ever received any part of this bonus, or exacted a sum in excess of 6 per cent. as interest on the loan. It is the lender that must exact the illegal bonus or interest. The mere fact that the borrower's agent exacted it or received it does not connect the lender with the transaction so as to make the loan usurious. There is no allegation that Zittel & Sons were the plaintiff's agent; that Zittel & Sons, when exacting this bonus, acted on behalf of the plaintiff; that the plaintiff did any more than make the loan at the request of the defendants' agent who procured it; and no direct allegation that the plaintiff ever received any of the usurious interest or bonus.

I think the answer was insufficient, that the court below was justified in refusing to take evidence, and that the judgment should be affirmed.

---

(159 App. Div. 596)

### HATCH v. LAKE SHORE & M. S. RY. CO.

(Supreme Court, Appellate Division, Fourth Department. December 23, 1913.)

1. RAILROADS (§ 351*)—CROSSING ACCIDENTS—INSTRUCTIONS—REFUSAL.

In an action for the wrongful death of one at a railroad crossing, where it appeared that a freight train on another track had just preceded a passenger train and that at the time of the accident the crossing gates were down, the refusal of an instruction that deceased had no right to assume that the gates were lowered for the freight train only, but that they were a signal for all trains about to pass, was improper, for the jury would understand from the denial of the request that it was submitted to them as a question of fact whether deceased might be considered free from negligence if he governed his conduct, on approaching the track on which he was struck, on the assumption that the gates had only been lowered for the freight train.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1193–1211, 1213–1215; Dec. Dig. § 351.*]

2. RAILROADS (§ 333*)—CROSSING ACCIDENTS—CONTRIBUTORY NEGLIGENCE.

A person standing within the gates at a railroad crossing and in a place of safety, and knowing that a train may be approaching in either direction at any moment, is guilty of contributory negligence if he proceeds to cross before the gates are raised.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1080–1083; Dec. Dig. § 333.*]

Kruse, P. J., and Lambert, J., dissenting.

Appeal from Trial Term, Chautauqua County.

Action by Cora May Hatch, as administratrix of the estate of Elmer H. Hatch, deceased, against the Lake Shore & Michigan Southern Railway Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

See, also, 156 App. Div. 394, 141 N. Y. Supp. 1055.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Plaintiff's intestate was killed at about 1:30 o'clock in the morning on April 7, 1912, at the Lion street crossing of defendant's railway tracks in the city of Dunkirk, having been struck while attempting to pass over the crossing on foot by one of defendant's fast passenger trains called the "Twentieth Century Limited." Lion street is one of the principal business streets of Dunkirk. The railway crossing is protected by gates on each side, and there are five tracks running east and west across Lion street, which runs north and south.

Deceased, with his companion Nelson, undertook to pass over the crossing from the north to the south side, along the sidewalk on the easterly side of Lion street. The first two tracks on the north side are sidings and not used for through trains, either passenger or freight. The third track is the west-bound track of defendant's main line, and the train which struck and killed plaintiff's intestate was running west on this track. The fourth track is used for defendant's east-bound trains, and the fifth track is another siding. The distance from the north rail of the west-bound track on which deceased was struck to the northerly curb line of Third street, which crosses Lion street at right angles, is 50 feet, and the distance between the north rail of the west-bound track and the south rail of the siding track immediately north of it is 12½ feet. The two main line tracks are straight toward the east for about 1,700 feet. The tracks on the two north sidings were not occupied with standing cars east of Lion street, nor were there any cars or engines moving on either of these sidings at the time of the accident, or during the time that deceased and his associate were attempting to pass over the crossing.

One of the disputed questions of fact is as to whether deceased and Nelson passed on to the crossing around the gate after it was lowered, as was defendant's contention, or whether the gate was lowered after they had proceeded on to the crossing and were at a point midway between the first and second sidings, as was plaintiff's contention, and as plaintiff's witnesses Nelson and Bartos testified.

According to their testimony, when deceased and Nelson were between the two sidings, the gates came down, and Nelson says that he and deceased then looked around and saw them go down; that at that time a long freight train was approaching the crossing from the west on the east-bound track, being the fourth track from the north side of the crossing; and that they stood between the first and second siding tracks about two minutes while this freight train was proceeding east over the crossing; and that when about two cars of the freight train remained to pass they started on south walking slowly. They stopped again about nine feet north of the west-bound track. At that time the freight train had not entirely cleared the crossing, and, as the caboose of the freight train was coming on to the crossing, they started, walked slowly four or five feet, and were struck by the engine of the "Twentieth Century Limited" moving west on the third track, being the track between where they last stopped and the east-bound track on which the freight train was running. At the time they were struck, the freight train had not yet cleared the crossing. Nelson testifies that both he and Hatch looked to the east and to the west, but neither discovered the approach of the "Twentieth Century Limited" on the east, although it ran over a straight track for at least 1,700 feet in full view from where they stood, with nothing to interfere with their view except the darkness and the absence or dimness of the headlight. Hatch was proceeding some in advance of Nelson, who, at the last moment discovering the approach of the engine, attempted to seize hold of Hatch and draw him back, without success. Hatch was killed, and Nelson was injured and has an action pending against defendant on that account.

The grounds of negligence left to the jury were the absence of warning signal by bell or whistle, the absence or dimness of the headlight, and the speed of the train, variously estimated by the witnesses at from 25 to 50 or 60 miles an hour. An ordinance of the city of Dunkirk prohibited the blowing of whistles within the city limits at this time of night. There was conflict in the evidence as to whether the bell was rung. There were switch and signal lights along the tracks to the east from the crossing, which plaintiff claims rendered it difficult to identify the locomotive headlight, if dim, and distinguish it from the other lights.

The evidence upon the question of defendant's negligence and the alleged contributory negligence of deceased was not materially different upon this trial than upon the previous trial, which was reviewed in this court (Hatch v. L. S. & M. S. R. Co., 156 App. Div. 394, 141 N. Y. Supp. 1055), except that upon this trial evidence was given by private detectives employed by defendant since the first trial tending to show that plaintiff's witness Nelson had admitted to them that his testimony upon the first trial as to the care and caution used by deceased and himself in attempting to pass over this crossing was false.

Deceased was a police officer and had been employed for nearly a year prior to his death as a night watchman by the owners of the buildings in the vicinity of this railroad crossing. He was familiar with the crossing and its surroundings and the uses made of the several tracks and the operation of defendant's railroad at that point.

Argued before KRUSE, P. J., and ROBSON, FOOTE, LAMBERT, and MERRELL, JJ.

Hoyt & Spratt, of Buffalo (Thomas D. Powell, of Buffalo, of counsel), for appellant.

Nelson J. Palmer, of Dunkirk, for respondent.

FOOTE, J. On the first trial defendant's counsel requested the court to charge the jury that, if plaintiff's intestate walked under the gates when down, its verdict should be for defendant, which was refused. In our review of the first trial, this ruling was held to be erroneous, and the judgment for plaintiff was, on that ground, reversed and a new trial ordered. In the course of the prevailing opinion in considering this question, it was said:

"A person who consciously goes upon railroad tracks at a street crossing, knowing that the gates are closed, takes chances which I think a reasonably careful and prudent person does not ordinarily take. He does so at his peril, and I think is guilty of negligence as a matter of law unless there are special circumstances to justify him in so doing, and which I think are absent in this case."

Also:

"I think there is evidence which clearly shows that the deceased saw the gates lowered and that he went onto the tracks without heeding the warning of the closed gates. It is a matter of no importance whether he went under the gate, around it, or jumped over it. The point is that he went upon the tracks having warning that it was unsafe for him to do so."

Upon the present trial the learned justice presiding instructed the jury, in substance, that if deceased and Nelson passed the gate after it was down, then plaintiff was not entitled to recover, and the verdict must be for defendant. He also charged that:

"The lowered gates are an indication that the railroad has and is entitled to the exclusive use of the tracks for the time being, and a person who attempts to cross is guilty of contributory negligence as a matter of law."

Also, that there was no evidence from which the jury could find that on the occasion in question the gates were negligently operated.

[1] The court was requested by defendant's counsel to charge that:

"Mr. Hatch had no right to assume that the gates were lowered for the passage of the freight train only, but that they are a signal for all trains that are about to pass or are passing."

This the court refused, holding that the question was one for the jury, and defendant excepted.

We think this was error. This request must be considered in the light of the circumstances of the case. We think the jury would understand from the denial of this request that it was submitted to them to determine as a question of fact whether Mr. Hatch might be considered free from negligence if he governed his conduct in approaching the track on which he was struck on the assumption on his part that the gates had been lowered only for the freight train, and that the law would permit them to find him free from negligence while acting upon that assumption and failing to take the precautions for his safety which otherwise he would have considered it necessary to take.

[2] The court was also requested by defendant's counsel to instruct the jury that:

"It is the duty of a person standing within the gates at a railroad crossing and in a place of safety and knowing that a train may be approaching from either direction at any moment, and he sees the gates go down, not to proceed across until the gates are raised, and if he does so he is guilty of contributory negligence as a matter of law."

This request the court refused, holding that it was a matter for the jury to determine, and defendant's counsel excepted.

We think this exception was well taken. The principle involved in the request is the same in substance as that involved in the question determined upon the former appeal. There can be no distinction between the duty of a pedestrian at a railroad crossing in this respect, whether he stands on one side or the other of the gate, so long as he is in a place of safety. In this case the jury could have found that the place where deceased and Nelson were standing when the gates went down was a place of safety, as it was a siding not then being used.

This request was repeated in substance in another form, as follows:

"That a person crossing railroad tracks protected by gates, and who, when standing inside the gates or between the gates, and without stopping, observes that the gates are down or going down, and that a train is approaching from the west on the east-bound track, the further track from him, and knowing that a train is due or may come from the opposite direction on the west-bound main track, the one immediately next to the one occupied and between him and the freight train, and with no emergency or reason requiring him to cross before the gates are raised, proceeds across and is struck by a train on the west-bound track, is guilty of contributory negligence as a matter of law."

The court also held that this was a question for the jury, and defendant excepted.

There was evidence from which the jury might have determined that there was no emergency or reason requiring Hatch to proceed over the crossing before the gates were raised, and if they so found, we think, as matter of law, Hatch was guilty of contributory negligence in proceeding on to the main tracks before the gates were raised for the same reasons that would have made him guilty of such negligence had he passed around or under the gates and proceeded upon the main tracks under the same circumstances.

We shall not consider here whether a finding by the jury that at the

time the gates went down deceased was not in a place of safety, or that no emergency existed or reason for requiring him to cross before the gates were raised, would have sufficient support in the evidence to sustain it, as a new trial will be necessary and the evidence may not be the same.

We think the judgment must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur, except KRUSE, P. J., and LAMBERT, J., who dissent upon the ground that it was a question of fact whether the deceased was negligent in proceeding 'across the tracks, if, in fact, the gates were lowered after he went upon the tracks.