ANTONIO VEGA ROSADO, ETC., Plaintiff and Appellee, v. AMERICAN RAILROAD COMPANY OF PORTO RICO, Defendant and Appellant.

No. 8000.   Argued April 12, 1940.—Decided July 19, 1940.

*Mariano Acosta Velarde* for plaintiff. *Juan B. Soto* and *Enrique Igaravídez* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

On February 26, 1936, Antonio Vega, eight years of age, represented by his father, brought, in the District Court of San Juan, an action against American Railroad Co. of Porto Rico, a corporation organized under the laws of the State of New York and authorized to engage in the business of a public carrier in Puerto Rico, to recover the sum of $4,000 as damages; and on December 12, 1938, he obtained a judgment for $1,000, with costs. From that judgment the defendant took the present appeal.

The controversy was stated as follows: By the plaintiff: On November 18, 1935, between seven or eight o'clock in the morning, near the Tras Talleres Station, at a grade crossing on Cerra Street in Santurce, P. R., while waiting for an engine of the defendant's railroad, which was pulling several cars, to finish crossing the street, he was struck by a railroad motor car *(automóvil de vía)* owned and operated by the defendant which ran over him throwing him upon the pavement, and causing him several serious injuries that were described, he having to be confined in the municipal hospital.

The motor car was driven by Miguel Gavilán, an employee of the defendant. The collision was due to the fault and negligence of said employee, who drove the vehicle backwards unmindful of the persons who were on the street, without giving any warning of his approach. Thereby the defendant caused the plaintiff damages in the amount of $4,500.

The defendant stated its case thus: The complaint failed to state facts sufficient to constitute a cause of action. It admitted that it is a corporation and that on the day and at the place alleged by the plaintiff the latter was struck by the railroad motor car, but it denied that this occurred on the grade crossing formed by Cerra Street and the railroad track, or that the plaintiff was standing there, and on the contrary alleged that the accident occurred outside of the grade crossing when the defendant had attempted to cross the track. It denied that the plaintiff suffered the alleged injuries or that he had to be confined in the municipal hospital. It admitted that Gavilán, its employee, was driving the motor car, but it specifically denied that the collision was due to its fault or negligence as charged by the plaintiff. It denied that the plaintiff suffered damages in the amount claimed or in any other amount.

As new matter of defense, it alleged that if there was any fault or negligence on its part or on the part of its employees in connection with the accident, there was also fault, carelessness, or contributory negligence on the part of the minor, such contributory negligence being the proximate cause of the accident.

The district court, in support of its judgment and in accordance with the law, filed a statement of the case and opinion, from which we transcribe the following:

". . . At Stop 15, Santurce, near the station known as Tras Talleres, there is a grade crossing which crosses Cerra Street from east to west. At this public crossing there are three railroad tracks lying almost at right angles with the said street, which extends into the public highway leading to Bayamón. The first track, in the

direction from Bayamón to San Juan, is a small siding; the next is the main track of the defendant which goes on to Ponce, and the third is another siding. On November 18, 1935, at about eight o'clock in the morning, the plaintiff, who was on that day a boy of less than eight years of age, was walking in the direction of the school on the western sidewalk of Cerra Street, going from south to north. Upon reaching the crossing, he started to cross at the same time that a train consisting of an engine and several cars was moving on the main track of the defendant; the plaintiff stopped at the first siding on the south to wait until the train had passed in order that he could continue on his way. The gates were closed, the plaintiff alleging that they were closed when he was already on the crossing and the defendant on the contrary stating that such act was done before the boy had come upon the grade crossing. The fact is that at the same time that the train was crossing, a railroad motor car belonging to the railroad which was moving on the same track where the plaintiff stood, from Tras Talleres towards San Juan, struck him and caused him serious injuries which compelled him to be confined in the municipal hospital from the date of the accident to December 12 of the same year. The evidence was conflicting as to whether any bell was being rung while the motor car approached, but in view of the opinion that we have formed of the case, we think that this question is unimportant. Conceding that the driver of the motor car sounded the signal apparatus, we feel sure that the boy, absorbed as he was in looking at the passing train, either failed to hear the bell by reason of the great noise made by the moving train, or confused the sound of the bell of the motor car with that of the engine which was drawing the cars. The fact is that the plaintiff did not hear the warning signal of the motor car and that he had not the slightest suspicion that a railroad motor car would come along the track on which he stood. This motor car was moving backwards, that is, in an opposite direction from that of the front part thereof (on reverse). It was driven by an employee of the defendant company and on the rear end thereof there was no lookout to warn the driver of the presence of persons on the track. The grade crossing in question is a public crossing where there is much traffic, and it definitely appears from the testimony of the employees of the defendant corporation that even after the gates were lowered people continued to cross the tracks. The collision occurred at the western end of Cerra Street, that is, on the side opposite to that from which the motor car causing the accident

emerged. We also think that the child was standing there and that he could have been seen by any lookout that the motor car might have had.''

After stating the above facts, it reached the conclusion that the defendant was negligent under the following reasoning:

''We have no doubt that the defendant company was negligent. At a public crossing of the kind involved herein, where there is so much traffic, and where the very employees of the defendant corporation knew that even after the gates were closed the traffic continued, and that even persons pushing handcarts ventured upon the grade crossing, it was the duty of the employees of the company to antici-pate at such place the presence of adults and with more reason of children; and this being so, the driver of the railroad motor car should have taken all the reasonable precautions that were possible for the proper protection and security of those persons. If the motor car was moving backwards, its driver should have had some person to warn him of the presence of other persons on the track. We think that in failing to do so he was negligent, and his negligence was chargeable to the company. Under all the attendant circum-stances of this case, we do not think that it was sufficient for the motor car to sound the bell. When the automobile came upon the crossing, its driver knew that another train was coming in an op-posite direction; that the latter was making much noise; and that it was most natural and probable that the persons standing on the crossing would not hear his warning signal as they were watching the passing train; and that the noise of the latter would drown the sound of the bell of the motorcar or confuse it with the sound of that of the train. Although it is true that it is not negligence *per se* to drive an engine or motor car backwards, it is otherwise where this is done without having a person on the rear end thereof to act as a lookout. We have no doubt that this accident could have been avoided if the defendant company had fulfilled its duty to keep a lookout for the purpose of anticipating the presence of strange persons on that public crossing. In *Ryan* v. *La. Railway, etc., Co.,* 83 So. 371, it is said:

'' 'It was the lookout's duty to have seen the child, and his failure to do so constitutes negligence. He, too, says that he gave the necessary signals to the fireman to stop the train but, as has been seen before, his testimony is contradicted by the fireman and the

engineer, who discovered the accident for themselves and the engineer put on the emergency brake. He may have signaled the fireman, but his signal was too late to be effective.' . . .''

The court then quoted from the cases of *Hollins* v. *N. O. & N. W. R. R. Co.*, 119 La. 418, 44 So. 159, and *Texas etc. Railroad Co.* v. *Brouillette*, 126 S. W. 287, and went on to say:

''See also 52 C. J. 213, sec. 1811, n. 79, and *Mannino* v. *Boston & Maine Railroad Co.*, (Mass., 1938), 14 N. E. (2d) 122; *Central etc. Railway Co.* v. *Graham*, (Ala.) 119 So. 654; *Simmons* v. *Chicago etc. Railway Co.*, (Ia., 1934) 252 N. W. 516. It makes no difference that barriers were used; the latter have not been bulit for the purpose of preventing the entry of persons upon the crossing but only to give warning of an immediate danger. It makes no difference either that the company should have complied with all the statutory requirements in the sense of giving a warning with its signal apparatus. *Reed* v. *Queen Anne's Railroad Co.*, (Del.) 57 A. 529; 52 C. J. 214, sec. 1811, n. 83; *Mannino* v. *Railroad Co., supra.*

''We feel strongly influenced in this case by the decision in *Ramos* v. *Sucesión J. Serrallés*, 51 P.R.R. 332. The gist of the *Serrallés* case, as may be clearly inferred from the opinion rendered, was the fact of the custom on the part of the children to play at the place where the portable track of the defendant in that case had been installed. From that fact, said the Supreme Court, it was necessary to reach the conclusion that, the cartmen, employees of the defendant succession, were bound to anticipate the presence of the minor involved in the accident, and that therefore, it was their duty, before driving onward the oxen which drew the cars, to ascertain whether or not there were any children underneath or among the cars, and in failing to do so they were negligent. Although in that case much emphasis is laid upon the attractive nuisance doctrine, we think that the case is supported by the general principles of negligence. If in said case judgment was rendered in favor of the plaintiff on the ground of an existing duty to anticipate the presence of the children, a similar ground exists in the instant case. We repeat: The evidence definitely shows that in spite of the barriers the children continued to enter; this fact was known by the employees of the defendant; this being so they should have taken additional precautions. It is true that a railroad company is not an insurer of the lives of pedestrians who cross its tracks and that

it should not be required to exercise such an extreme degree of care as to render unduly burdensome the operation of a business which is so necessary for the economic life of the community; but the protection of the citizens and specially of the children demands that it should be required to exercise a reasonable degree of care by taking measures which do not prejudice or injure its business. The placing of a lookout when an engine or motor car is moving backwards causes no great trouble and may be effected at a very low cost.''

The appellant has assigned ten errors claimed to have been committed by the trial court. By the first it is maintained that said court erred in applying the attractive nuisance doctrine to this case.

In arguing this assignment the appellant relates what occurred at the trial when the plaintiff sought to amend his complaint by substituting for the expression ''while the plaintiff was standing'' the following words: ''while the plaintiff, attracted by the passenger car of the moving train.'' The defendant objected on the ground that the amendment substantially changed the cause of action. Both parties argued the point and the court decided:

''. . . At this stage of the proceedings, the court would not allow the amendment, . . . However, the court will admit evidence on the question of attractive nuisance; it will admit it despite the absence of an amendment. But if before such evidence can be introduced an amendment is necessary, then the court in deciding the case will not consider the attractive nuisance theory.''

The appellant then cites the cases of *Pérez* v. *People*, 54 P.R.R. 32, *Rivera* v. *The Porto Rico Drug Co.*, 32 P.R.R. 470, *González* v. *Porto Rico Ry. L. & P. Co.*, 34 P.R.R. 545, as showing that the decisions of this court are to the effect that in a complaint based on the attractive nuisance doctrine it is necessary to allege and describe what the attraction consisted of and to show knowledge on the part of the defendant that the children would be attracted.

The whole question has arisen because of the statement made by the district judge in his opinion, that he felt

strongly influenced by the decision of this court in *Ramos* v. *Sucesión J. Serrallés,* 51 P.R.R. 332; but this does not mean that the complaint was based nor that the court rested its decision, on the attractive nuisance doctrine.

As already indicated, that statement was made by the court after expressing that "it had no doubt that the defendant was negligent," and after examining the evidence and citing the general jurisprudence on which it based its conclusion. Moreover in referring to the facts of the *Ramos* case, *supra,* the court took special care to point out that "although in that case much emphasis was laid upon the attractive nuisance doctrine, we think that the case is supported by the general principles of negligence." And with that consideration in mind, relying solely on the pleadings and the evidence, the trial judge rendered his judgment.

The fact that the spirit which inspired the .decision of this court in the *Ramos* case and which permeates the same, happened to exert some influence on his mind and on his conscience as a judge, does not mean that he rested his decision on the attractive nuisance doctrine.

In our judgment, the error assigned was not committed. The decisions of this court relied on present distinct situations, and it must be noted that the paragraphs which the appellant transcribed from the case of *Rivera* v. *The Porto Rico Drug Co., supra,* forms part of the dissenting opinion and not of the opinion of the court.

The second assignment of error is based on the ground that the trial court could not take into consideration the lack of a lookout on the motor car of the defendant, as that fact was not alleged in the complaint. The appellant again cites to support its contention the dissenting opinion in the case of *Rivera* v. *The Porto Rico Drug Co., supra.*

The question raised was expressly dealt with by the trial court in its opinion and decided as follows:

". . . We agree with the defendant that where the negligence acts are specifically alleged in the complaint, the evidence must be

confined to those acts, excluding all others, and for this reason we have only considered the negligence of the defendant in entering the crossing backwards without having a lookout, a negligent act which is clearly covered by the complaint when it says:

" 'That the employee of the defendant who operated the motor car, did so without observing the persons who were on the street, driving said vehicle in a direction opposite to that corresponding to the front part or end of the motor car.' "

We do not think that the conclusion of the court is so groundless that it must be considered as erroneous and that in consequence thereof the judgment should be reversed.

In the third assignment the question of the lookout is again discussed and it is maintained that the trial court erred in declaring that the accident could have been avoided if the defendant had complied with the requirement under the attendant circumstances, of furnishing its motor car with a lookout.

"Although it is true," said the trial court in its opinion, "that it is not negligence *per se* to drive an engine or motor car backwards, it is otherwise where this is done without having a person on the rear end thereof to act as a lookout." And, in our judgment, it committed no error, regard being had for the attendant circumstances, to wit: the place, the customary presence therein of pedestrians, including children, and pushcarts, despite the lowering of the gates; the train passing at the same time that the motor car emerged, which drowned the sounding signal of the motor car.

As to the statement that the accident could have been avoided if the defendant's railroad motor car, which was moving backwards, had been supplied with a lookout, this conclusion is so logical that no other one could have been possible. The child would necessarily have been seen by the lookout and he would not have been struck by the motor car, either because the latter would have been stopped or because the lookout would have speedily and effectively warned the child to remove to a place of safety.

It would seem advisable to transcribe the rule set forth in 2 Restatement of the Law of Torts, pp. 918–920, sec. 338, thus:

"A possessor of land, who is in immediate control of a force, and knows or, from facts within his knowledge, should know of the presence of trespassers in dangerous proximity thereto, is subject to liability for bodily harm thereby caused to them by his failure to exercise reasonable care.

"(a) *       *       *       *       *       *       *

"(b) to give a warning which is reasonably adequate to enable them to protect themselves.

*Comment:*

"(a) *       *       *       *       *       *       *

"(b) The rule stated in this Section applies to any moving force over which the possessor is in immediate control, in so far as the force is connected with a condition created or maintained by him. This is so irrespective of whether the particular force is actually set in motion by him, by a force of nature or by a third party with or without his consent.

*Illustrations:*

"1. *       *       *       *       *       *       *

"2. A sees B, a child, about to step in front of the descending wing of his windmill. A could easily stop the motion of the wing in time to prevent its striking B but fails to do so. A is liable to B irrespective of whether the wing was set in motion by him or by an unexpected gust of wind.

Comment on Clause (b):

"(c) A warning may be adequate to enable a trespasser to protect himself from a moving force under the possessor's control by either enabling him to avoid the force or to take such steps as will prevent its harming him if he encounters it."

■ The fourth assignment relates to the admission by the court, over the objection of the defendant, of evidence tending to prove that it was the practice and custom of the pedestrians · to cross the railroad tracks despite the lowering of the gates, and to the taking into consideration of said evidence in deciding the case against the defendants.

We fail to see how this assignment can be maintained by the appellant when two of its witnesses testified as follows:

Germán Serrano, in charge of closing the gates, on cross-examination by the attorney for the plaintiff, at the end of his testimony, p. 91 of the transcript of the evidence, stated:

"Q. Is it not a fact that automobiles go inside the gates even after the same have been closed? Before the one on the Bayamón side is closed?

"A. At that place there are times when automobiles stop and when requested to move out in order to close the gates they refuse to do so.

"Q. And, of course, children and other persons go in there without restriction?

"A. It is customary for the public there, to pass under the barriers even after the same have been closed, and although they are warned they pay no attention.

"Q. Has that happened for a long time?

"A. Ever since I have been there."

Bienvenido González, on cross-examination by the attorney for the plaintiff, pp. 116 and 117 of the stenographic transcript, testified as follows:

"Q. Were there any people inside the barriers?

"A. The people are accustomed to go in there . . . some inside, others outside . . . as the workmen themselves do.

"Q. But other persons, pedestrians. . .

"A. Well, that is the custom of the people who pay no attention to the barriers when the same are closed, and they cross underneath them.

"* * * * * * *

"Q. You stated that you had been there for about a quarter of an hour. What were you waiting for there at that time?

"A. It is customary. . . I go there to talk with the others.

"Q. Were you inside the barriers?

"A. That is the custom of persons who are out of work.

"Q. And what was the first traffic movement that occurred there? Was it the train or the motor car?

"A. The two things happened almost at the same time: the train going upon the grade crossing and the motor car emerging."

By the fifth assignment it is maintained that the court erred in finding that of the three existing tracks, the main track was the second one coming from Bayamón to San Juan.

In support of this contention the appellant refers to the photographs introduced in evidence. We have examined them, and, in our judgment instead of contradicting, they explain the finding of fact challenged. In any event, it clearly appears from them that the track on which the motor car emerged is the first one encountered coming from Bayamón to San Juan. There was no error, or if any was committed it was harmless.

By the sixth assignment it is charged that the court erred in adjudging the defendant to pay $200 as medical fees.

The question thus raised was carefully considered and decided, correctly as we think, by the trial court in its opinion, as follows:

"During the trial the court, over the objection of the defendant, permitted Dr. Arsenio Comas to testify as to the value of the medical services rendered to the plaintiff and also as to a slight deformity resulting from the injuries received by the latter. The ground of the objection was the lack of any specific allegation in the complaint regarding such resulting deformity or the rendition of said services. We think that no specific allegation was necessary. In the complaint the injuries received by the minor were detailed; they were of a serious character, and put the defendant on notice that they required medical attention. Moreover, under a general allegation of damages evidence may be introduced as to the permanent effect of the injuries received. In 1 Bancroft's Code Pleading, 285, it is said:

" 'In an action for personal injury suffered, the plaintiff may recover all the damages proximately caused by the tort, under a general allegation of the whole of the amount of damage caused. And so, the plaintiff is entitled to recover damages for any impairment of his capacity, as a previously healthy person, to earn money, as well as for expenses incurred for medical treatment, under a general averment of damage.'

"And in 1 Bancroft's Code Pleading, 284, it is said:

" 'The future and permanent effect of injuries necessarily result-
ing to the plaintiff from the negligence of the defendant need not
be specially alleged in order to warrant a recovery therefor, but are
recoverable under the general *ad deamnum* clause.'

"Nor is it necessary to show that the medical fees have been
paid. It is sufficient that there should exist the normal obligation
to make such payment. 8 R.C.L. 500, sec. 61; 17 C. J. 803, sec.
129. The physician testified that his services were worth $200, and
we think that this is a reasonable estimate. In view of all the
circumstances of the case, we think that a total award of $1,000, in
which we have included $200 as medical fees, is reasonable.

The appellant insists that there is no right to recover
the medical fees, because Dr. Comas, resident physician of
the Municipal Hospital of San Juan, treated this patient as
a charity case, and it cites *García* v. *Fernández*, 52 P.R.R.
176.

The doctor testified: "In this case the relatives of the
patient have not paid me anything, but if they were able
to pay the treatment would be worth $200." And all that
was said in the cited case in analyzing the evidence, was:

"According to the evidence, D. R. Carrión, Inc. paid the expenses
of the treatment given to the minor by Dr. Rolenson, including his
fees for professional services, and for the X-rays taken by Dr. Roses
Artau. Dr. Biascoechea said that he had treated the case as a
charity case and there was no evidence as to who paid for the X-rays
taken by him." *García* v. *Fernández*, 52 P.R.R. 176, 180.

A city physician, within the hospital in which he renders
his services, is bound to give treatment free of charge to
any person brought and needing medical assistance and who
is insolvent. But this does not mean that if said person
is not insolvent, or if a third person is bound to pay for
such treatment, the physician is precluded from recovering
the proper compensation from the patient or from such third
person.

In *Garcia* v. *Fernández, supra,* Dr. Biascoechea treated the case as a charity one *and there was no evidence as to who paid for the X-ray photographs taken by him.* Here Dr. Comas also treated the case as a charity case and *there was evidence that his unpaid services were worth two hundred dollars.* The same situation is not involved in both cases.

■ The seventh and eighth assignments are jointly argued by the appellant, as really both raise the same question, to wit: the sufficiency of the evidence which the appellant attacks.

We shall not go into an analysis of the evidence introduced by both parties. It will suffice to say that we have examined it and in our judgment it supports the findings of fact made by the trial court. The conflict observed in the testimony of both parties, as, for example, on the question of whether the accident occurred while the plaintiff stood waiting for the defendant's railroad to pass in order to cross the track, or whether it occurred when the plaintiff attempted to cross running, was adjusted by the court against the defendant, who has failed to show any passion, prejudice, or partiality or manifest error on the part of the court.

■ The ninth assignment raises the interesting question of the contributory negligence charged by the plaintiff against the defendant.

This question, as happens with all others involved in this case, has been so well-considered by the district judge in the opinion which forms the basis of his judgment, that we shall let him show, by his own reasoning, the nonexistence of the error charged against him. He said:

"Having held that the defendant company was negligent, we must now decide whether this child, who at the time of the accident had not yet attained the age of 8 years, could be charged with contributory negligence. We have no doubt that if an adult or a person

*suit juris* were involved, the judgment would have to be in favor of the defendant. The contributory negligence of the plaintiff would have defeated his claim notwithstanding the negligence of the defendant railroad. We have no doubt, and it is firmly established, that going upon a crossing after the gates have been lowered constitutes contributory negligence. It is the duty of a pedestrian about to enter upon a grade crossing to stop, look, and listen to discover approaching trains. The existence of the railroad track is a sufficient warning to him of the danger involved in failing to do so. And this duty on the part of the traveler is rendered more exacting where the gates have already been lowered. The latter give him warning that as long as they are in that position the crossing will be used by the vehicles of the company, and if notwithstanding this he attempts to cross, he does so at his own peril. If there are several tracks, the fact that a train passes on one of them does not mean that the gates have been lowered for that train exclusively but also for any other train or trains which may pass upon the other tracks, and hence it makes no difference whether the accident has been caused, not by the train which passed at the time the traveler entered the crossing, but by another train which ran on another track of the grade crossing. *Lake Shore, etc. Railway Co.* v. *Ehlert,* (Ohio) 58 N. E. 812; *Hatch* v. *Railroad Co.,* 141 N.Y.S. 1055; *Duvall* v. *Michigan Cent. R. Co.,* (Mich.) 63 N. W. 437; *Allerton* v. *Boston & M. R. Co.,* (Mass.) 15 N. E. 621; *Douglas* v. *Chicago, etc. Railway Co.,* (Wis.) 76 N. W. 356; and *Hatch* v. *Railroad Co.,* 145 N.Y.S. 781.

"No subject in the field of jurisprudence is more controversial than the rule to be followed in determining the contributory negligence of children. The authorities are in open conflict. See the note published in L.R.A. 1917 F., pp. 10 to 203. While some of them hold that a child under seven years is conclusively presumed incapable of contributory negligence, and that between the ages of seven and fourteen there is a *prima facie* presumption of incapacity; others on the contrary hold that even a child seven years of age may be capable of negligence, and the question is to be determined by taking into consideration his age, intelligence, and discretion. However, one thing is certain and firmly established; the same degree of care is not required of a child as of an adult. It is natural that this should be so. The rule which precludes a recovery where the plaintiff has been guilty of contributory negligence is based upon considerations of public policy. It is not possible, say the decisions, that a plaintiff should be permitted to recover for injuries which he

himself contributed to cause. It would be a dangerous incentive. The reason for the rule ceases to exist where the person has not sufficient discernment to appreciate the danger to which he is exposed. The real question to be decided in this case is whether the plaintiff exercised the same degree of care ordinarily observed by prudent children of the same age and intelligence in similar cases. In other words, whether the child realized the danger of standing on the track after the gates had been lowered. *Rivera* v. *Porto Rico Drug Co.,* 32 P.R.R. 470; *Rivera* v. *Sucrs. of López Villamil & Co.,* 29 P.R.R. 257. The boy lacked a few days to be eight years of age; he was in the second grade; from his testimony and from our personal observations at the time of the trial, we have reached the conclusion that he was far from possessing an intelligence superior to that with which other children of his age are ordinarily endowed; although he was familiar with the place by reason of the fact that he frequented the same, we do not think that he should be charged with notice that when the gates were lowered this was done for the purpose of warning against the danger from standing on any of the tracks that existed in the crossing. A child of such age could very well have thought that the gates had been lowered only for the train that was passing. Contributory negligence is an affirmative defense. The burden of proof was on the defendant. And the evidence is far from convincing us that this child had sufficient discretion to be guilty of contributory negligence, in view of all the attendant circumstances of this case.''

The tenth and last error assigned is formulated in general terms, namely, that the judgment rendered is against the law and the evidence. This question has already been determined in passing upon the other assignments. The error is nonexistent. The facts and the law support the judgment.

Therefore, said judgment must be affirmed.

Mr. Justice Wolf concurs in the result.

Mr. Justice De Jesús took no part in the decision of this case.