MONROE, J.
This is an ¿ppeal from a verdict and judgment for $2,000 against the New Orleans & Northwestern Railroad Company and the Natchez & "Western Railroad Company, for the killing of the plaintiff’s child. The facts disclosed by the record are as follows:
On the morning of June 16, 1905, between 10 and 12 o’clock, a mixed train of cars came into the town of Yidalia, and, after discharging its passengers and getting rid of its freight or baggage cars, was reduced to an engine and two coaches, and, at the moment of the killing, was being backed through one of the streets of the town, to the.depot, which is situated just inside the levee and at a point where it forms a right angle, so that, as the train approached it, after rounding ' a curve in the track, one arm of the levee was immediately to its right, and the other crossed its path; the depot being within the angle thus formed.
The train crew consisted of an engineer, a fireman, and a brakeman. The engineer and fireman were at their posts, in the cab of the engine, the brakeman (speaking of the coach, which, as the train was moving, was nearer to the depot, as coach No. 1, and of the other as coach No. 2, and of the end of the train which was nearer the depot as the front, and of the other as the rear, end) was on the rear platform of coach No. 2, next to the engine. There was no one-on the front of the train, or any nearer to the front than the brakeman. The conductor was standing at a point about 200 feet distant from that at which the accident occurred, and the weather conditions are not shown to have been unusual. As thus operated, the train reached the depot, which is-about 75 feet beyond the point at which the accident occurred, and the engine was detached from the coaches and taken away for other work. Shortly afterwards, it was discovered, by some one in passing, that plaintiff’s child, a boy about five years old, had been run over, and, coach No. 2 having been raised by means of jack screws, the body,, still warm, but mangled and lifeless, was-removed from beneath its rear truck. No one-had seen the accident, and, by reason of the curve in the track, and the positions occupied by them, no one connected with the train could have seen it. It is shown that children were accustomed to playing in the-street near the place where the accident occurred, and that the railway employés frequently had occasion to warn them away,, and (whilst such an admission is hardly necessary) it is admitted, by the conductor who-had charge of the train, that some one ought to have been in front, keeping a lookout. Under these circumstances, we have no hesitation in finding that the failure to maintain such a lookout was the grossest and most inexcusable negligence, and that it is for those who are responsible for that negligence to-show that the tragedy, which would otherwise have been its natural consequence, was,, in fact, attributable to some other cause.
The learned counsel for the defense say:
“There can be no doubt, we think, that this-lamentable accident was caused by the attempt" of the child to steal a ride on the train. In other words, he was a mere trespasser, and, as-such, the railroad owed him no duty except not to wantonly injure him. The accident happened from the sudden and unanticipated act of *421 the child itself, which could neither be foreseen nor guarded against.”
We are, however, unable, so readily, to assume that a child, five years old, will attempt to steal a ride on a moving railroad train. If, however, the infant had been near enough to the track to have made such an attempt, as the rear end of coach No. 1 was passing, he would have been near enough, when the front end of that coach passed, for the lookout, if there had been one, to have seen him, to have recognized his peril, and to have rescued him, as the train was moving very slowly. But whether the child walked or fell under the train between the coaches, or whether he fell in front of the train, and, coach No. 1 having passed over him, was killed whilst attempting to get out, is a matter of conjecture, and that it is so that a railway train should be so operated, through a public street, where children are known to be in the habit of playing, as, in broad daylight, to run over and kill one of them, without the knowledge of any of the crew, is the most remarkable feature of the case. It is contended that the two companies made defendants do not occupy such a relation to each other as to authorize a judgment against them in solido. We think, however, that any reasonable mind, with knowledge of the testimony, and of the facts disclosed in the record, would conclude that, whilst, for the convenience of the parties, the autonomy of the Natchez & Western Railroad Company has been preserved, the company itself is owned and operated by and with the New Orleans & Northwestern Railroad Company; and, if the ínfima facie case thus made out is not the real case, it was for the defendants to show it. The knowledge of their relations is in their possession, and not in the possession of the plaintiff.
Judgment alarmed.
LAND, J., takes no part, not having heard the argument.-