No. 7067.

# UNDERWOOD TYPEWRITER CO. v. FRANK VATTER.

## Syllabus.

The burden of proof lies with the party who is the most cognizant of the facts necessary to decide an issue. Thus where plaintiff locates his property in defendant's possession, the burden of proof is upon the latter to account for his failure to produce it.

A typewriter sent by a merchant to a prospective buyer on trial is not subject to the lessor's privilege.

Appeal from the Civil District Court, Parish of Orleans, No. 113,837, Division "C"; Honorable E. K. Skinner, Judge. Reversed.

H. W. Robinson, for plaintiff and appellant.

E. P. Quinius, for defendant and appelee.

His Honor, CHARLES F. CLAIBORNE, rendered the opinion and decree of the Court, as follows:

Plaintiff claims the value of a typewriter which it alleges defendant appropriated.

The petition sets out that on January 27th, 1913, it delivered to the Southern Securities Company, at its domicile, No. 435 Carondelet Street, one Underwood Typewriter for the purpose of demonstration, with the distinct understanding that if said typewriter proved satisfactory it was to be purchased by said company and remain with it, otherwise it was to be returned to petitioner on demand; that the said typewriter was not sold to the Southern Security Company and was not its property; that it

410

was only on its premises transiently and was not therefore subject to the lessor's lien; that about one week after the above date Frank Vatter, the owner of the premises, 435 Carondelet, took possession of said typewriter without judicial proceedings in part payment of rent due and has since retained it.

The defendant denied every allegation of the petition.

There was judgment of nonsuit and plaintiff has appealed.

The testimony is as follows:

George A. Vatter, a son of defendant, was told by Ramsey, Agent of defendant, that the plaintiff had left a typewriter in the building, but he does not know it personally, and does not know what became of the machine; he did not tell Mr. Wherry that he could not have the machine; he told him to see Ramsey & Danziger.

Cicero A. Ramsey was the agent of defendant for the property 435 Carondelet; the Southern Securities Co. was in arrears for rent; in payment of the rent the Company in the early part of 1913 assigned to him as agent the contents of the office; he has not been able to find the assignment; he thinks he gave it to Mr. Vatter; there was no itemized list; he saw the contents of the office but cannot say that there was a machine in it; the key was delivered to him, and he delivered it to the janitor of the building; the agents of the plaintiff requested him to let them have the key to the office to get the machine; but he refused them, saying that whatever was in there was assigned to and belonged to Vatter; he cannot swear that the contents of the office were turned over to Mr. Vatter; the office was subsequently leased to other people and there was some of the furniture in there still.

411

Philip J. Burg, a collector for the plaintiff says that in the early part of 1913 he saw George Vatter about the machine who told him he knew nothing about it and to see his father, Frank Vatter; he saw Frank Vatter who said he knew nothing about it, but to see his agents, Ramsey & Danziger or his son, George Vatter.

J. A. Wherry testifies that in the early part of 1913 he called on Ramsey & Danziger who said they had the contents of the office and had locked it up and they knew what the law was and they were within their rights; he saw Mr. George Vatter who said the machine was not in the office and plaintiff could not have it; that a machine had been moved out by someone; there were two machines in the office, an old one and a new one, and the old one had been delivered to the Southern Typewriter Company; he saw his machine in the office four or five days, probably a week, before the assignment; he did not deny that he had their machine.

Walter J. Coquille said that he was salesman for the Underwood Typewriter Company; that he went to the office of the Southern Securities Company; that he could not get into the place because it was locked; he peeped through the transom but the machine was gone; he called on George Vatter with Mr. Wherry and the former admitted he had seized it for rent and the machine was not on the premises; George Vatter said "we have the machine; you see my father"; I saw the machine in the morning in the office but when I returned it was gone.

Frank Vatter swears that Ramsey & Danziger attend to the renting of his houses; that he did not know that his house 435 Carondelet was rented to the Southern Securities Company; he knows nothing about the typewriter claimed in this case; he never saw it.

Robert L. Daly was one of the salesmen of the Southern Securities Company, located at 435 Carondelet; he saw the machine in the office; when the office was closed he went to Mr. Ramsey with a bill of sale of the furniture to avoid the expense of legal proceedings, of seizure, etc.; it was the absolute understanding that the typewriter did not belong to the company and that it was exempt from the arrangement so that it could be returned to the company; the machine was in the office at the time this arrangement was made and the key of the office surrendered to Mr. Ramsey; Ramsey told him a few days ago that the machine would have been returned if certain things had not happened; when he left the office last the machine was in the office; the stenographer and his wife continued to go to the office for several days as they had two keys, perhaps for ten or fifteen days; he does not know if the machine was in the office when the office force finally abandoned the office.

Mr. Ramsey, recalled, testifies that he has no recollection that Mr. Daly ever made any reservation of the machine in the assignment; Frank Vatter approved the assignment; witness delivered the key of the office to his son George; he thinks George went up and looked at the contents of the office.

Robert K. Mitchell was porter of plaintiff company in 1913; he delivered the typewriter at the office of the Southern Securities Company, No. 435 Carondelet Street, for which Miss Maybelle Levy in the office gave him a receipt which he produces.

The evidence establishes beyond a doubt that the typewriter was delivered by the plaintiffs to the office of the Southern Securities Company, No. 435 Carondelet Street;

413

that the Southern Securities Company failed to pay the rent of the office, and that they gave the furniture contained in the office in payment of the rent due, and surrendered possession of the office with its key and contents to Ramsey, the agent of the defendant; that he delivered the key to George A. Vatter, the son, acting for the father. The evidence leaves no doubt in our minds that at the time George A. Vatter received this key and took possession of the office the typwriter was in the office. In no part of his testimony does he deny this. When plaintiffs made a demand upon the defendant for their machine the latter referred them to his son, George; and when they saw George, he pretended that it was not his business, and that they should see Ramsey. When they saw Ramsey, and asked him for the key of the office to get their machine out, he told them "they couldn't go in the office, because whatever was in there was assigned to us and it belonged to Vatter." As it was in the power of defendant and his agents, it was their duty to make certain the fact whether that machine was in their office or not and to account for its disappearance. 11 *M.* 4, 194; 30 *A.* 511; 33 *A.* 1065; 106 *La.* 591; 110 *La.* 840; 118 *La.* 611; 119 *La.* 418; 1 *H. D.* 495, *VIII* 2; 13 *A.* 397; 14 *A.* 429, 207; 15 *A.* 509, 663.

Their refusal to so act raises the presumption that the machine was in the office and that some one of the two agents knew it and that was the reason of their refusal. Far from rebutting this presumption, the evidence confirms it. The defendant must therefore pay for its value unless he had a right to retain it in payment of the rent due.

The receipt signed by Maybelle Levy for the Southern Securities Company states that it is for "Examination" and reads as follows:

414

"Received from the Underwood Typewriter Company the above mentioned property, which if not purchased is to be returned to any authorized representative of said company upon demand."

The facts connected with the delivery of the machine to the Southern Securities Company are thus detailed by Walter J. Coquille, salesman for the machine Company:

Q. Do you know on what conditions the typewriter was sent to the Securities Company?

A. Yes, sir; as a trial, to accomodate the stenographer, Miss Levy; I think that was her name, and she kept the typewriter there in order to get Mr. Daly, the man she was working for, to buy it.

This testimony is corroborated by Mr. Daly, one of the managers of the Securities Company.

This typewriter was therefore not the property of the lessees the Southern Securities Company, but was only in their office to tempt them into purchasing it in case it suited them, and it did not cease to belong to plaintiffs herein.

The law gives the lessor a privilege and pledge and right of detention upon the movable effects of the lessee which are found on the property leased.  C. C. 2705 (2675).

Article 2707 (2677):

"This right of pledge affects not only the movables of the lessee and underlessee, but also those belonging to third persons, when their goods are contained in the house or store, by their own consent, express or implied."

Article 2708 (2678):

"Movables are not subject to this right, when they are only transiently or accidentally in the

415

house, store, or shop, such as the baggage of a traveller in an inn, merchandise sent to a workman to be made up or repaired, and effects lodged in the store of an auctioneer to be sold."

In the case of *Simonton v. Mitchell, No.* 3311 of this Court, on appeal from a City Court, Judge Estopinal held that the lessor's pledge attached in a case like this.

But the attention of the learned Judge had not probably been called to a prior opinion of this Court rendered by three judges June 7, 1903, in the case of *Larendon v. Newith, No.* 3213, an appeal from a District Court, where it was held that the lessor's pledge did not affect a thresher in the possession of the lessee "on trial."

In 8 La. 509, it was decided that cotton sent to the Press was not liable to the lessor's privilege.

In 28 A., 93, sugar sent to a refinery to be clarified was also exempt from the lessor's privilege.

The case of *Twitty v. Clarke*, 14 A., 503, does not involve the same facts. Besides, the Court said, that "the proceeding by sequestration was irregular * * * if plaintiff had rights his remedy was by injunction."

Article 2102 of the Code Napoleon is as follows:

"Privileged claims on certain movables are: 1. Rents of immovables on the crops of the year and on all that furnishes the rented house or farm and on all that serves for the cultivation of the farm, &c."

The Courts and the Commentators are of the opinion that what was contained in the house, not there to remain, but only in passing, or accidentally, or momentarily, was not subject to the lessor's privilege. 4 *Dalloz Codes Annotes on Art.* 2102, *p.* 1292, *Nos.* 160, 161; *p.* 1294, *Nos.* 227,

416

228 *to* 232; 3 *Aubry & Rau*, §261, *p*. 143; 25 *Merlin Vo. Privilege, p.* 193, *Sec.* III §II; 3 *Pothier, p.* 335, §245; 37 *Dalloz Rep., p.* 72, §248 *to* 258.

It is therefore ordered that the judgment of the District Court be reversed and annulled; and it is now ordered that there be judgment in favor of the plaintiff the Underwood Typewriter Company and against the defendant Frank Vatter, for the sum of One Hundred and Two and 50/100 Dollars with five per cent per annum interest from January 27th, 1913, till paid, and all costs of suit.

Opinion and decree, June 25th, 1917.

Rehearing referred July 17th 1917.