### No. 2175
### Second Circuit Appeal

---

## M. P. HENDERSON v. J. L. LANCASTER AND C. L. WALLACE AS RECEIVERS OF THE TEXAS & PACIFIC RAILWAY COMPANY

---

(June 6, 1925, Opinion and Decree.)

---

*(Syllabus by the Editor.)*

1. Louisiana Digest—Railroads—Par. 84, 89.

Where the record does not disclose that the engineer of a railroad train or the railroad company was negligent in the killing of two bird dogs by a train, judgment must be for the defendant railroad.

2. Louisiana Digest—Railroads—Par. 88.

"Bird dogs" are not "stock" or "live stock" and consequently Act No. 70 of 1886 has no reference to and does not include in its meaning dogs, and therefore the placing on a defendant railroad company the burden of proving want of negligence in order to escape liability for injuring or killing stock, does not apply in an action for killing a dog.

(Civil Code, Art. 2315. Editor's note.)

Appeal from Thirteenth Judicial District Court of Louisiana, Parish of Rapides, Hon. L. L. Hooe, Judge.

This is a suit to recover the alleged value of two bird dogs killed by a railroad train. There was judgment for plaintiff and defendants appealed.

Judgment reversed.

Bruton T. Dawkins, of Alexandria, attorney for plaintiff, appellee.

Peterman, Dear and Peterman, of Alexandria, attorneys for defendants, appellants.

ODOM, J. Plaintiff brings this suit to recover the sum of $3300.00, the alleged value of two pointer bird dogs run over and killed by a train on defendant's railroad.

He alleges that his dogs were property assessed and were worth the amount that he claims.

And he especially alleges in paragraph five of his petition:

"That the killing and death of his said two dogs by defendant's said train was due solely and alone to the gross carelessness, negligence and want of care and skill of defendant's agents, servants and employees operating said train."

And it is further alleged, upon information and belief that the defendant was negligent also in allowing the carcass of a dead animal killed by its train to remain at its track or on its right of way at a point where his dogs were killed, and that the presence of his dogs on defendant's track was due to said carcass having been left there.

And he further alleges "that defendant was further negligent and at fault in failing to stop its train or get it under control when said dogs were observed on its track or right of way; and that said defendant in addition to failing to stop its train or getting it under control in order to avoid running over said dogs, failed to employ the usual means of frightening animals from its track".

And in paragraph eight he alleges that he was guilty of no negligence or fault or want of care whatever and "that the killing of his said dogs was due solely and entirely to the negligence, want of care and skill of defendant, its servants, agents, representatives and employees".

In answer, defendant denied any indebtedness whatever to plaintiff, and sets up the following defence in paragraph seven of the answer.

"Further answering, respondents show that even if it be proved that one of respondent's trains ran over and killed said dogs, (which, however, is denied); and further; even if it be proven that the killing of said animals was negligently done, (which, however, is denied); and further, even if it be proven that said dogs were duly assessed to plaintiff as alleged in the 3rd paragraph of said petition, nevertheless plaintiff cannot recover herein and respondents are not liable herein, because of the fact that respondents are informed, believe, and therefore aver that said dogs were trespassers upon respondents tracks and right of way, and also because said plaintiff had paid no license tax on said dogs as required by law in intendment of the statutes of Louisiana."

There was judgment in the lower court in favor of the plaintiff for $275.00 and costs, from which judgment defendants appealed.

### OPINION.

The testimony shows beyond question that plaintiff's dogs were killed by one of defendant's trains. The dogs were both found on or near the railroad track, one with its head severed from its body, and parts of the mangled body of the other one were found along the track for some distance, and there were hair and blood on the rails.

We think, also, that plaintiff made out his case as the value of the dogs. The District Judge found the value of the two dogs to be $275.00, and while this may be high yet there is no evidence that they were not worth that amount and we cannot say that the District Judge erred on that point.

The dogs were placed on the assessment roll at $150.00 each in March, 1922, and were killed in October of that year.

The real, and we think the only point at issue which calls for our attention, is whether the killing of the dogs due to the fault and negligence of those in charge and operating the train which killed them:

We have quoted at length from plaintiff's petition to show that he stresses the point in three different articles thereof that the killing of the dogs was due solely and exclusively to the gross fault and negligence of the agents and employees of defendants; and quote from defendant's answer to show that the alleged carelessness and negligence of such employees is especially denied; and therefore the issue of negligence is especially raised in the case.

It will be conceded, of course, that if the defendants were not negligent or careless in the operation of the train which killed plaintiff's dogs there can be no recovery against them and that the burden of proving negligence, if any there was, is upon the plaintiff, unless under some special legislation he has been relieved of that burden.

So far as the record discloses no one saw the dogs killed and no one knows just when they were killed.

The testimony shows that the track at the place where the dogs were killed is straight for at least a mile each way; that there was no grass or weeds or bushes hanging over or near the track; and, in fact, nothing to obstruct the view of those operating the train.

Counsel says that if those in charge of the train had been looking they could have seen the animals and could have stopped the train or could have frightened them away and he argues that the fact that they did not see them and stop the train or frighten them away shows that they were careless and negligent.

In his brief, after reviewing the above facts as to the condition of the track, he says: "Under the facts above outlined defendant was clearly negligent".

We cannot agree with learned counsel on this point. Of course if the animals were on the track some time before they were hit the operators of the train should have seen them. It was their duty and their business to see that which was on the track in front of the train and their failure to see is negligence. But the fact that these animals were struck and killed does not by any means prove that they were on the track long enough to enable the train crew to protect them. Dogs like those killed are remarkably fleet, agile animals, more so than cattle, horses, sheep, goats or swine, and it may well be that they got on the track so quickly and so near to the train that it could not be stopped in time to save them. This was in the country where there were no crossings, so far as the record discloses, where those in charge of trains are permitted to operate them at full speed. It would be manifestly impossible to stop a fast train in time to save a dog which jumped on the track just ahead of it. The court cannot infer negligence merely and solely because these animals were run over and killed by a train.

Counsel says in brief.

"Knowledge of how these dogs met their death was in the possession of the railroad company alone. Only its train crew knew the facts, and under the well established rules of evidence the failure of the railroad company to produce it would justify the court in holding that on the facts disclosed by plaintiff the railroad company was responsible. It made no explanation of the killing."

Defendant did not have to explain the killing. Counsel overlooks the fact that negligence on the part of defendant was alleged by him as a part of his case and

that the burden is on him to prove it. Defendant did not have to disclose the manner in which the dogs were killed. That is a part of the plaintiff's case and it was his duty to do that. The defendant does not have to make out plaintiff's case for him. The rule referred to by plaintiff does not apply to a case of this kind.

"What must be alleged, must be proved."

Counsel cites volume 1 of Ruling Case Law page 1201 to the effect that when it appears that dogs on the track, fighting, for instance, or setting birds, are oblivious to danger, it is the duty of the train crew to stop or to check speed in order to avoid killing or injuring them.

That is true, of course, but that principle, of course, is based upon the assumption that those in charge of the train saw the dogs in time to save them.

Counsel cites the case of Hollins vs. New Orleans & N. W. R. Co., 119 La. 418, 44 South. 159, to the effect that when in broad day light, a child of tender years is found on a railway track killed and no one connected with the operation of the train was aware of the killing, it is for those who are responsible for such killing to show that the accident was not due to their negligence.

That case is not at all analagous to the case at bar. In that case the train crew were backing a train over a curved track through a town where children were accustomed to playing without a lookout on on the forward end of the train to warn those who might be in danger or to signal the train crew. The court held that this was the grossest and most inexcusable negligence to show that the tragedy was due to some other cause.

We find no proof that the defendant in the instant case was guilty of negligence. There is no proof that those in charge of the train saw the dogs at all, and if it

be assumed that they did not see them, there is nothing to indicate they they saw them in time to check the train in order to avoid killing them. In fact, as stated, the circumstances of the killing are not disclosed by the record. We cannot assume from the state of facts disclosed in this case that railroad company was negligent.

Counsel urges that even if the court should hold that no negligence was proven by plaintiff, that plaintiff is relieved from the burden of proving negligence because dogs are "stock" under the provisions of Act 70 of 1886 which provides that in suits against railway companies for the loss of "stock" killed or injured by them it shall be sufficient for plaintiff to prove, in order to recover, that his "stock" was killed by the defendant company, unless the defendant company prove that the killing or injury to such "stock" was not due to its fault or negligence.

This act relieved the plaintiff of the burden of proving negligence on the part of defendant and required railroad companies to disprove negligence in cases where plaintiff proved the killing or injury of stock by them.

But the act limits this rule to actions for the loss of "stock" killed or injured. Dogs are not "stock" in the ordinary and popular meaning of that term.

Counsel cites no authority, nor have we been able to find any, holding that the word "stock" or the words "live stock" have been construed to include dogs in their meaning. "Stock" as defined in Webster's New International Dictionary means domestic animals, used and raised on a farm, especially cattle, sheep, hogs, etc. The term "live stock" as used in the Packers Stock Yard Act of 1921 means cattle, sheep, swine, horses, mules and goats. In Words & Phrases, volume 5, page 4192, we find mention, under the head of "Live-

stock", cattle, horses, mules, asses, sheep, hogs, meat cattle, swine and goats.

See, also, Words & Phrases, volume 7, page 6660, under the head of "Stock".

In the Code of Iowa, the term "stock" means cattle, horses, mules and asses.

Under the Revised Statutes of Wyoming relating to railroads, the terms "stock" and "Live Stock" include all classes of horses, asses, mules, meat cattle, sheep, goats, and swine.

In 25 Cyc. 1515, under the head of "Live Stock", we find domestic animals, kept for farm purposes, especially marketable animals, as cattle, horses, sheep, etc.

As used in the Fence and Stock Law of North Carolina, the word "stock", means horses, mules, colts, cows, calves, sheep, goats, jennets, meat cattle and swine.

We are unable to find any definition or interpretation of the terms "stock" and "live stock" in which it has been held that these terms include dogs:

In a great many jurisdictions it has been held that dogs are not domestic animals, but in as many others the contrary has been held.

In the case of State vs. Harrison, 75 Maine 562 (46 American Reports 423) it was held that an indictment for killing a dog could not be maintained under a statute providing a penalty for killing or wounding a domesticated animal.

Dogs are not in the class of ordinary domesticated animals. From the standpoint of being property they are not even in the class with fowls, such as chickens, geese and turkeys. This is true in practically all of the states so far as we are able to ascertain.

Dogs are not property under Louisiana law today unless assessed. They cannot be made the subject of larceny unless carried on the assessment roll. We do not think of them ordinarily as property, and this is true not only in the state of Louisiana but everywhere. On the con-

trary, we always think of "stock" or "live stock" as property, that is, something of value intrinsically.

There is a special act of our legislature granting cities, towns and villages authority to prohibit the running at large of live stock of all kinds. No one ever construed the term "live stock" in that act to have reference to dogs.

In the case of Duval vs. Harvey, 148 La. 739, 87 South. 730, the court held that an unassessed dog has the status of a wild animal to a certain extent.

The reason that we do not think of dogs as of any value as property is because they have no intrinsic value. It took a special act of the legislature to make them property in Louisiana.

We do not mean to intimate that dogs are not valuable. They may be, and we are not discussing the question as to whether a dog is more valuable than a cat, a parrot or any other pet. That is not the question. The question is whether or not the term "stock" as used in the act of the legislature above referred to includes dogs. The words "stock" and "live stock" in common parlance and under the law have reference to animals which have intrinsic value as for food or beasts of burden.

Our conclusion, therefore, is, that the word "stock" as used in Act 70 of 1886 has no reference to and does not include in its meaning dogs, and that the provisions of that act, placing on a defendant railroad company the burden of proving want of negligence in order to escape liability, for killing or injuring stock, do not apply in an action for killing a dog.

The plaintiff in this case was not relieved of the burden of proving negligence, which he alleged, and not having proved negligence he cannot recover.

For the reasons assigned, it is therefore ordered, adjudged and decreed that the judgment appealed from be reversed and plaintiff's suit dismissed at his costs.