ANTONIO VEGA ROSADO, representado por su padre con patria potestad ANTONIO VEGA ALVAREZ, demandante y apelado, *v.* AMERICAN RAILROAD COMPANY OF PORTO RICO, demandada y apelante.

Núm. 8000.—*Sometido:* Abril 12, 1940. *Resuelto:* Julio 19, 1940.

*Mariano Acosta Velarde,* abogado de la apelante; *Juan B. Soto* y *Enrique Igaravídez,* abogados del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

En febrero 26, 1936, Antonio Vega, de ocho años de edad, representado por su padre, demandó ante la Corte de Distrito de San Juan a la American Railroad Co. of Porto Rico, una corporación organizada de acuerdo con las leyes del estado de Nueva York y autorizada para explotar el negocio de porteador público en Puerto Rico, en reclamación de cuatro mil dólares por daños y perjuicios, y obtuvo una sentencia por mil,. con costas, en diciembre 12, 1938. La demandada interpuso contra la sentencia el presente recurso de apelación.

El debate se planteó como sigue: Por el demandante: En noviembre 18, 1935, de siete a ocho de la mañana, cerca de la estación Tras Talleres, en el paso a nivel que atraviesa la calle de Cerra, en Santurce, P. R., mientras se encontraba aguardando que terminara de cruzar la calle una máquina

del ferrocarril de la demandada que tiraba de varios vagones, fué atropellado por un automóvil de vía poseído y explotado por la demandada que lo arrolló lanzándolo sobre la calle, causándole varias contusiones de gravedad que especifica, teniendo que ingresar en el Hospital Municipal. Guiaba el automóvil Miguel Gavilán, empleado de la demandada. El choque se debió a la culpa y negligencia de dicho empleado que condujo el vehículo sin fijarse en las personas que estaban en la calle, en dirección opuesta a la parte delantera, del mismo, sin dar aviso de su proximidad. De tal modo la demandada causó al demandante daños y perjuicios por valor de cuatro mil quinientos dólares.

Y por la demandada: La demanda no aduce hechos suficientes determinantes de causa de acción. Acepta que es una corporación y que en el día y sitio indicados por el demandante éste fué alcanzado por el automóvil de vía, pero niega que lo fuera en el paso a nivel formado por la calle Cerra y las vías férreas y que el demandante se encontrara parado, alegando en contrario que el accidente ocurrió fuera del paso a nivel y al intentar el demandante cruzar la vía. Niega que el demandante sufriera las contusiones que alega y que tuviera que ingresar en el Hospital Municipal. Acepta que Gavilán, su empleado, guiaba el auto de vía, pero niega específicamente que el choque se debiera a la culpa y negligencia que el demandante le imputa. Niega que el demandante sufriera perjuicios en la suma que reclama ni en otra alguna.

Como materia nueva de defensa especial alegó que si en el accidente medió culpa o negligencia alguna por su parte o de cualquiera de sus empleados, también medió la propia culpa, descuido o negligencia contributoria del menor, siendo esa negligencia contributoria la causa próxima del accidente.

Para basar su sentencia, la corte de distrito de acuerdo con la ley archivó una relación de hechos y opinión de la cual transcribimos lo que sigue:

"...En la parada 15, en Santurce, cerca de la estación conocida con el nombre de TRAS TALLERES hay un paso a nivel que atraviesa

la Calle Cerra de este a oeste. En este cruce público existen tres líneas de vías formando casi ángulos rectos con la referida calle cuya prolongación viene a ser la carretera pública que llega hasta Bayamón. La primera vía, viniendo de Bayamón hacia San Juan, es un pequeño desvío; la siguiente es la línea principal de la demandada y que continúa hasta Ponce; y la tercera es otro desvío. El 18 de noviembre de 1935 y como a las 8 de la mañana, el demandante, un niño que en dicha fecha aún no había cumplido 8 años de edad, se dirigía a la escuela por la acera oeste de la calle Cerra y en dirección de sur a norte. Al llegar al cruce comenzó a atravesarlo en los momentos que por la línea principal de la demandada iba un tren compuesto de una máquina y varios vagones; el demandante se paró en el primer desvío al sur a esperar que el tren terminara de pasar para él entonces reanudar su marcha. Las barreras estaban bajadas, alegando el demandante que ellas fueron bajadas cuando ya él estaba dentro del cruce, diciendo por el contrario la demandada que esta operación se realizó antes que el niño entrase en el paso a nivel. Lo cierto es que al mismo tiempo que el tren cruzaba, un automóvil de vía propiedad del ferrocarril venía por la vía donde se encontraba el demandante, de Tras Talleres hacia San Juan, arrollándolo y causándole contusiones de carácter grave que lo tuvieron recluído en el Hospital Municipal desde la fecha del accidente hasta diciembre 12 del mismo año. La prueba fué contradictoria en cuanto a si el automóvil venía o no tocando campana; pero dada la opinión que tenemos en cuanto al caso, creemos que esta cuestión no tiene importancia alguna. Asumiendo que el conductor del automóvil viniera usando el aparato de alarma, estamos seguros que el niño, absorto como estaba en la contemplación del tren que pasaba, o no oyó la campana por impedírselo el enorme ruido del ferrocarril en marcha, o confundió el sonido de la campana del vehículo de motor con el de la máquina que tiraba de los vagones. Lo cierto es que el demandante no oyó la señal de alarma del automóvil de vía y que el niño estaba sin la menor sospecha de que por la vía en que se encontraba viniese hacia él un automóvil. Este coche venía de espaldas, esto es, en dirección opuesta a la parte delantera del automóvil (en *reversal*). Era guiado por un empleado de la compañía demandada y no tenía en su frente ninguna persona que le indicase al conductor la presencia de personas que pudieran encontrarse en la vía. El paso a nivel que nos ocupa es un cruce público, de mucho tráfico, y quedó firmemente establecido por los propios empleados de la corporación demandada que aún después de bajadas las barreras la gente continuaba atravesando las vías. El choque ocurrió al ex-

tremo oeste de la Calle Cerra, o sea a la parte opuesta de donde salió el automóvil que ocasionó el accidente. Creemos además que el niño estaba allí parado y pudo haber sido visto por cualquier vigía que hubiera tenido el automóvil.''

Expuestos los hechos, llega a la conclusión de que la demandada fué negligente a virtud del siguiente razonamiento:

''No tenemos duda alguna de que la compañía demandada fué negligente. En un cruce público, como el que nos ocupa, de tanto tráfico, y que los propios empleados de la corporación demandada sabían que aún después de bajadas las barreras continuaba el trajinar, y que aún personas conduciendo carritos de mano se aventuraban a cruzar el paso a nivel, era obligación de los empleados de la compañía anticipar en ese sitio la presencia de adultos, y mucho más de niños; y si ello era así, el conductor del automóvil de vía debió tomar todas las precauciones razonables posibles para la debida protección y seguridad de dichas personas. Si el automóvil iba caminando hacia atrás, su conductor debió tener una persona que le indicase la presencia en la vía de personas extrañas. Creemos que al no hacerlo así fué negligente; y su negligencia es imputable a la compañía. No creemos suficiente con que el automóvil de vía tocara campana de acuerdo con todas las circunstancias concurrentes en este caso. Al salir el automóvil al cruce, era sabido por su guía que otro tren venía en dirección contraria; que éste hacía mucho ruido, siendo lo más natural y probable que las personas en el cruce no oyesen su señal de alarma por estar pendientes del tren que pasaba, cuyo ruido ahogase el sonido de la campana del automóvil o confundiesen su sonido con la del ferrocarril. Aunque es cierto que no es negligencia *per se* el conducir una máquina o automóvil hacia atrás, sí lo es, cuando ello se hace sin tener en la parte delantera una persona como vigía. No tenemos duda alguna que este accidente se hubiera evitado si la compañía demandada hubiese cumplido con esta obligación de tener un vigía para anticipar la presencia de personas extrañas en ese cruce público. Dícese en *Ryan* v. *Louisiana Railway etc. Co.*, 83 So. 371:

'' 'It was the lookout's duty to have seen the child, and his failure to do so constitutes negligence. He, too, says that he gave the necessary signals to the fireman to stop the train but, as has been seen before, his testimony is contradicted by the fireman and the engineer, who discovered the accident for themselves and the

engineer put on the emergency brake. He may have signaled the fireman, but his signal was too late to be effective.'..."

Se transcribe de los casos de *Hollins* v. *N. O. & N. W. R. R. Co.*, 119 La. 418, 44 So. 159, y *Texas etc. Railroad Co.* v. *Brouillette,* 126 S. W. 287, y se continúa diciendo:

"Véase además 52 C. J. 213, sección 1811, n. 79, y *Mannino* v. *Boston & Maine Railroad Co.*, (Mass.), (1938), 14 N. E. (2d) 122; *Central etc. Railway Co.* v. *Graham,* (Ala.) 119 So. 654; *Simmons* v. *Chicago etc. Railway Co.,* (1934), (Ia.), 252 N. W. 516. No importa que haya barreras; ellas no han sido hechas con el propósito de impedir la entrada al cruce de las personas, sino simplemente con el propósito de dar aviso de un peligro inmediato. No importa tampoco que la compañía hubiera cumplido con todos los requisitos estatutarios en el sentido de dar aviso con sus aparatos de alarma. *Reed* v. *Queen Anne's Railroad Co.*, (Del.) 57 A. 529; 52 C. J. 214, sección 1811, n. 83; *Mannino* v. *Railroad Co.*, supra.

"Nos sentimos fuertemente influenciados en este caso por la decisión de *Ramos* v. *Sucn. Serrallés,* 51 D.P.R. 343. El nervio del caso de Serrallés, deducible claramente de la opinión emitida, fué el hecho de la costumbre que tenían los niños de jugar en el callejón donde se instaló la vía portátil de la demandada en aquel caso. De ese hecho, dijo el Tribunal Supremo, había que llegar necesariamente a la conclusión de que los carreteros, empleados de la sucesión demandada, estaban en la obligación de anticipar la presencia del menor objeto del accidente, y que por tanto, antes de poner a caminar los bueyes que tiraban de los vagones era el deber de ellos, cerciorarse de que no había ningún niño debajo o entre los vagones, y al no hacerlo así fueron negligentes. Aunque en ese caso se hace mucho hincapié sobre la doctrina del peligro atrayente (*attractive nuisance*), creemos que el caso se sostiene por los principios generales de negligencia. Si allí se dictó sentencia a favor del demandante por la obligación en que se estaba de anticipar la presencia de niños, iguales motivos existen en el presente caso. Repetimos: la prueba demostró terminantemente que a pesar de las barreras los niños penetraban; esto lo sabían los empleados de la demandada; siendo ello así debieron tomar precauciones adicionales. Es cierto que una compañía de ferrocarriles no es una aseguradora de la vida de los viandantes que crucen sus vías y que tampoco se le debe exigir un grado extremo de cuidado en condiciones tales que hagan indebidamente onerosa la explotación de un negocio que es tan necesario para la vida econó-

mica de un pueblo, pero sí es necesario, para la protección de los ciudadanos, y especialmente de los niños, que se le exija un grado razonable de cuidado, que tome medidas que no perjudiquen o lesionen su negocio. El colocar un vigía cuando una máquina o automóvil de vía camina hacia atrás (en *reversal*) no ocasiona ninguna gran molestia y puede obtenerse a un ínfimo costo.''

Diez errores imputa a la corte sentenciadora la apelante. Por el primero se sostiene que dicha corte erró al aplicar a este caso la doctrina del peligro atrayente.

Al argumentarlo refiere la apelante lo ocurrido en el juicio al querer el demandante enmendar su demanda sustituyendo las palabras ''mientras el demandante se encontraba parado,'' por las que siguen: ''mientras el demandante, atraído por los carros de pasajeros del tren en movimiento.'' Se opuso la demandada por entender que con la enmienda se cambiaba substancialmente la causa de acción. Argumentaron ambas partes y la corte resolvió:

''...en este estado del procedimiento, la corte no permitiría la enmienda,... No obstante, la corte va a permitir prueba sobre la cuestión del *attractive nuisance;* la va a permitir a pesar de que no haya enmienda. Pero si para que pueda presentarse prueba es necesario una enmienda, la corte no tomará en consideración la teoría del *attractive nuisance.* para resolver el caso.''

Y seguidamente cita la apelante los casos de *Pérez* v. *Pueblo,* 54 D.P.R. 34, *Rivera* v. *The Porto Rico Drug Co.,* 32 D.P.R. 510, y *González* v. *Porto Rico R. L. & P. Co.,* 34 D.P.R. 573, como demostrativos de que la jurisprudencia de esta corte es al efecto de que en una demanda basada en la teoría de un peligro atrayente es necesario alegar y describir lo que constituye la atracción, así como el conocimiento que tiene la demandada de que los niños serían atraídos.

Toda la cuestión ha surgido por haber expresado el juez de distrito en su opinión que se sentía fuertemente influenciado por la decisión de esta corte en el caso de *Ramos* v. *Sucesión Serrallés,* 51 D.P.R. 343, pero ello no quiere decir que la demanda se fundara ni que la corte basara su fallo en la doctrina del peligro atrayente.

Como sabemos la manifestación se hizo por la corte después de haber dicho: "No tenemos duda alguna que la compañía demandada fué negligente" y de haber examinado la evidencia y citado la jurisprudencia general en que basa su conclusión. Además, al referirse a los hechos del caso de Ramos, supra, se cuidó muy bien la corte de consignar que "Aunque en ese caso se hace mucho hincapié sobre la doctrina del peligro atrayente *(attractive nuisance)*, creemos que el caso se sostiene por los principios generales de negligencia." Y con esa apreciación en mente y basándose exclusivamente en lo alegado y probado, fué que dictó su sentencia.

El que el espíritu que dió vida a la decisión de esta corte en el repetido caso de Ramos, supra, y en ella palpita, influyera en su mente y en su conciencia de juzgador, no quiere decir que dictara su sentencia a base de la doctrina del peligro atrayente.

A nuestro juicio el error señalado no fué cometido. Los casos de esta corte que se invocan presentan situaciones distintas, debiendo llamarse la atención hacia el hecho de que el párrafo que la apelante transcribe como del caso de *Rivera v. The Porto Rico Drug Co.*, supra, corresponde a la opinión disidente y no a la de la corte.

El segundo señalamiento de error se funda en que no pudo la corte sentenciadora tomar en consideración la falta de un vigía en el automóvil de la demandada, por no haberse alegado en la demanda esa circunstancia. Otra vez cita la apelante la opinión disidente en el caso de *Rivera v. The Porto Rico Drug Co.*, supra, en apoyo de su contención.

La cuestión que se levanta fué tratada expresamente por la corte sentenciadora en su opinión y resuelta como sigue:

"...estamos conformes con la demandada, de que al alegarse específicamente en la demanda los actos que constituyen la negligencia la prueba debe estar limitada a esos actos con exclusión de los demás y por eso hemos considerado solamente la negligencia de la demandada al entrar al cruce en *reversal* sin tener un vigía, acto de negligencia que está claramente incluído en la demanda al decirse:

" 'Que el empleado de la demandada que conducía el automóvil, lo hizo sin fijarse en las personas que se encontraban en la calle, manipulando dicho vehículo en dirección opuesta a la dirección en que se encontraba el frente o parte delantera del automóvil.' "

No creemos que la conclusión de la corte esté de tal modo desprovista de fundamento que pueda considerarse tan errónea que deba como consecuencia de ella revocarse la sentencia.

■ Por el tercer señalamiento se discute de nuevo la cuestión del vigía para sostener que erró la corte sentenciadora al concluir que el accidente se hubiera evitado de cumplir la demandada con su obligación de dotar su auto de vía, bajo las circunstancias concurrentes, de un vigía.

"Aunque es cierto", dijo en su opinión la corte sentenciadora, "que no es negligencia *per se* el conducir una máquina o automóvil hacia atrás, sí lo es cuando ello se hace sin tener en la parte delantera una persona como vigía." Y a nuestro juicio no cometió error alguno si se toman en consideración las circunstancias concurrentes, a saber: el sitio, la presencia usual en él aunque estuvieran bajas las barreras, de viandantes, incluyendo niños y carros de mano, el tren que pasaba al mismo tiempo que salía el automóvil y el ruido producido por el tren que ahogaba el toque de aviso del automóvil.

En cuanto a que el accidente se hubiera evitado si el automóvil de vía de la demandada que caminaba hacia atrás hubiera estado dotado de un vigía, es tan lógica la conclusión que no puede ser otra. El niño hubiera sido visto necesariamente por el vigía y no hubiera sido arrollado por el auto, bien deteniendo el auto su marcha, ya avisando el vigía rápida y eficazmente al niño para que él mismo se pusiera a salvo.

Parece conveniente transcribir la regla tal como se expresa en 2 *Restatement of the Law of Torts,* páginas 918 y 919, sección 338:

"Un poseedor de tierras, quien tiene el inmediato dominio de una fuerza y sabe, o de los hechos que le constan de propio cono-

cimiento deberá estar enterado de la presencia de transgresores (*trespassers*) en una cercanía peligrosa, responde de los perjuicios corporales ocurridos a tales transgresores por su omisión en emplear un cuidado razonable

"(a) .    .    .    .    .    .    .

"(b) dar un aviso que sea razonablemente adecuado para permitirles protegerse.

"Comentarios.

"(a) .    .    .    .    .    .    .

"(b) La regla expresada en esta sección se aplica a cualquier fuerza en movimiento (*moving force*) sobre la cual tenga el poseedor un inmediato dominio, en tanto la fuerza se halle conectada con una condición creada o sostenida por él. Esto es así independientemente de si la fuerza en cuestión es realmente puesta en movimiento por él, por una fuerza de la naturaleza o por un tercero con o sin su consentimiento.

"Ejemplos.

"1.—  .    .    .    .    .    .    .

"2.—A ve a B, un niño, próximo a pararse frente a un ala descendente de su molino de viento. A podría fácilmente detener el movimiento del ala a tiempo para evitar que ésta le diera a B, pero no lo hace. A responde a B independientemente de si el ala fué puesta en movimiento por él o por una ráfaga de viento imprevista.

"Comentario sobre la cláusula (b):

"(c) Un aviso puede ser apropiado para un transgresor protegerse de una fuerza en movimiento, bajo el dominio del poseedor, ya permitiéndole evitar la fuerza o bien tomar las medidas necesarias para protegerse de daños caso de enfrentarse con ella."

█ El cuarto error se hace consistir en haberse admitido por la corte, no obstante la objeción de la demandada, evidencia tendiente a probar que era la práctica y costumbre de los viandantes cruzar las vías férreas a pesar de estar puestas las barreras, y al tomar en consideración dicha evidencia al resolver el pleito en contra de la demandada.

No vemos cómo pueda sostenerse por la apelante el señalamiento cuando dos de sus testigos declararon como sigue:

Germán Serrano, encargado de poner las barreras, a repreguntas del abogado del demandante, al final de su declaración, página 91 de la transcripción de evidencia, dijo:

"A.—¿Y muchas veces no se meten carros dentro de las barreras aun a pesar de haberlas bajado? ¿Antes de que baje la de Bayamón hacia San Juan?

"T.—Allí hay veces que se paran los carros y uno los manda a salir para poner las barreras y no obedecen.

"A.—¿Y desde luego los niños y las personas entran allí sin límite?

"T.—El público tiene por costumbre allí después que se bajan las barreras pasar por debajo de ellas y aunque uno le llama la atención no hacen caso.

"A.—¿Eso hace tiempo que sucede?

"T.—Desde que estoy allí."

Y Bienvenido González, a repreguntas del abogado del demandante, páginas 116 y 117 de la transcripción taquigráfica, contestó:

"A.—¿Pero dentro de las barreras había gente?

"T.—Acostumbra la gente meterse allí... Unos dentro, otros fuera....como son los mismos trabajadores...

"A.—Pero otras personas, transeúntes...

"T.—Bueno, ésa es costumbre de la gente, que no respetan las barreras cuando las ponen y cruzan por debajo de ellas.

"A.—Usted declaró que había estado un cuarto de hora allí. ¿Qué esperaba usted allí a esa hora?

"T.—Costumbre... Que me voy a conversar con los demás allí.

"A.—¿Dentro de las barreras usted estaba?

"T.—Costumbre de uno cuando está sin trabajo.

"A.—¿Y cuál fué el primer movimiento de tránsito que hubo allí? ¿Fué el tren o el automóvil?

"T.—Las dos cosas casi fueron a la vez: el tren que entra al paso a nivel y el carro que sale.

Por el quinto señalamiento se afirma que erró la corte al concluir que la vía general, de las tres que existen, es la segunda viniendo de Bayamón para San Juan.

Para sostener su afirmación se refiere la apelante a las fotografías presentadas en evidencia. Las hemos examinado y a nuestro juicio en vez de ser contrarias, explican la conclusión de hecho impugnada. De todos modos resulta claro de ellas que la vía por donde salió el automóvil es la primera

viniendo de Bayamón hacia San Juan. No hubo error y si lo hubo no fué perjudicial.

■■■ Por el sexto señalamiento se imputa error a la corte al condenar a la demandada a pagar doscientos dólares como honorarios médicos.

La cuestión que se levanta fué estudiada cuidadosamente en su opinión por la corte sentenciadora y resuelta correctamente a nuestro juicio, como sigue:

"Durante la vista la corte permitió al Dr. Arsenio Comas, con la oposición de la demandada, declarar sobre el valor de los servicios médicos prestados al demandante, y además sobre una pequeña deformidad que le resultó con motivo de las lesiones recibidas. El fundamento de la oposición fué el de no haberse alegado específicamente en la demanda la resultante deformidad ni la prestación de tales servicios. Creemos que no era necesaria ninguna alegación especial. En la demanda se detallaron las contusiones recibidas por el menor, de por sí graves, y que daban suficiente aviso a la demandada de que ellas requerían intervención facultativa. Además bajo una alegación general de daños puede presentarse prueba del efecto permanente de las contusiones recibidas. Dícese en 1 Bancroft's Code Pleading, 285:

" 'In an action for personal injury suffered, the plaintiff may recover all the damages proximately caused by the tort, under a general allegation of the whole of the amount of damage caused. And so, the plaintiff is entitled to recover damages for any impairment of his capacity, as a previously healthy person, to earn money, as well as for expenses incurred for medical treatment, under a general averment of damage.'

"Y dícese además en 1 Bancroft's Code Pleading 284:

" 'The future and permanent effect of injuries necessarily resulting to the plaintiff from the negligence of the defendant need not be specially alleged in order to warrant a recovery therefor, but are recoverable under the general *ad deamnum* clause.'

"Tampoco es necesario demostrar que hubiesen pagado los honorarios médicos. Basta con que existiera la obligación moral de hacerlo. 8 R.C.L. 500, sección 61; 17 C. J. 803, sección 129. El médico declaró que sus servicios valían $200 y creemos que éste sea un valor razonable. Atendidas todas las circunstancias del caso creemos que una indemnización de $1,000 es razonable, en la cual hemos incluído $200 como honorarios médicos."

Se insiste por la apelante en que no hay derecho al cobro de honorarios porque el Dr. Comas, cirujano residente del Hospital Municipal de San Juan, trató al paciente como un caso de beneficencia y se cita a *García* v. *Fernández,* 52 D.P.R. 183, 188.

El doctor declaró: "En este caso los familiares del paciente no me han pagado a mí nada, pero si pudieran pagar valdría doscientos dólares el tratarlo." Y todo lo que se dice en el caso citado al analizar la prueba es:

"De acuerdo con la prueba, D. R. Carrión, Inc., sufragó los gastos de curación en que incurrió el Dr. Rolenson tratando a este menor, incluyendo sus honorarios por servicios profesionales, y las radiografías tomadas por el Dr. Roses Artau. El Dr. Biascoechea dijo que había tratado el caso como uno de beneficencia y no hubo prueba en cuanto a quién pagó las radiografías que tomó." *García* v. *Fernández,* 52 D.P.R. 183, 188.

Un médico de beneficencia municipal dentro del hospital en que presta sus servicios está obligado a tratar cualquier persona que allí se lleve necesitada de auxilio, y si es pobre, nada cobra. Pero ello no quiere decir que si no lo es o el pago de su curación corresponde a otra persona, no pueda obtener del paciente o de la persona responsable, la remuneración apropiada.

En *García* v. *Fernández,* supra, el Dr. Biascoechea trató el caso como uno de beneficencia y *no hubo prueba en cuanto a quién pagó las radiografías que tomó.* Aquí el Dr. Comas trató también el caso como uno de beneficencia y *hubo prueba de que sus servicios no pagados valían doscientos dólares.* No es el mismo el problema a resolver en ambos casos.

Los señalamientos séptimo y octavo se argumentan conjuntamente por el apelante y es que en verdad levantan la misma cuestión a saber, la de la suficiencia de la prueba, sosteniendo la apelante que no lo es.

No trataremos de analizar la evidencia que ambas partes presentaron. Bastará decir que la hemos estudiado y a nues-

tro juicio sostiene la declaración de hechos probados de la corte sentenciadora. El conflicto que se observa entre ciertos testimonios de una y otra parte, como por ejemplo acerca de si el accidente ocurrió estando parado el demandante esperando para cruzar a que pasara el ferrocarril de la demandada o si ocurrió al tratar el demandante de cruzar corriendo, lo dirimió la corte en contra de la demandada sin que ésta haya demostrado pasión, prejuicio o parcialidad, o error manifiesto por parte de la corte.

Por el noveno error se suscita la interesante cuestión de la negligencia contributoria imputada por la demandada al demandante.

Como todas las cuestiones envueltas en este caso, ésta ha sido tan bien estudiada por el juez de distrito en la opinión que sirve de fundamento a su sentencia, que dejaremos que sea él el que demuestre con sus razonamientos la no existencia del error que se le imputa. Dijo:

"Habiendo resuelto que la compañía demandada fué negligente nos toca decidir si a este niño, que aún no había cumplido ocho años de edad en la fecha del accidente, puede atribuírsele negligencia contributoria. No tenemos duda alguna que si se hubiera tratado de un adulto o una persona *sui juris* la sentencia hubiera tenido que ser a favor de la demandada. La negligencia contributoria del demandante hubiera derrotado la reclamación a pesar de la negligencia del ferrocarril demandado. No tenemos duda alguna, está firmemente establecido que constituye negligencia contributoria el atravesar un cruce cuando las barreras están bajadas. Existe la obligación del viandante al acercarse al paso a nivel, de pararse, oír y mirar para determinar la aproximación de un tren. Las vías del ferrocarril es aviso suficiente del peligro que corre al no hacerlo así. Y esta obligación del viajero sube de punto cuando las barreras están bajas. Ellas le dan aviso de que mientras están en esas condiciones el cruce será utilizado por los vehículos de la compañía y si se trata de cruzar, a pesar de ellas, lo hace a su propio riesgo. Si existen varias vías, el hecho de que un tren pase por una, no significa que las barreras se hayan bajado para ese tren exclusivamente, sino que también para cualquiera otro u otros que puedan posiblemente pasar por las demás, importando poco, por tanto, que el accidente

haya sido causado, no por el tren que pasa en el momento que el viandante entra en el cruce, sino por otro tren que corre por otra de las vías del paso a nivel. *Lake Shore, etc. Railway Co.* v. *Ehlert,* (Ohio), 58 N. E. 812; *Hatch* v. *Railroad Co.,* 141 N.Y.S. 1055; *Duvall* v. *Michigan Cent. R. Co.* (Mich.) 63 N. W. 437; *Allerton* v. *Boston & M. R. Co.* (Mass.) 15 N. E. 621; *Douglas* v. *Chicago, etc. Railway Co.* (Wis.) 76 N. W. 356, y *Hatch* v. *Railroad Co.,* 145 N.Y.S. 781.

"Nada hay tan contradictorio en el campo de la jurisprudencia como la regla a seguir para determinar la negligencia contributoria de un niño. Las autoridades están en un conflicto irreconciliable. Véase la nota en L.R.A. 1917F página 10 a 203. Mientras algunas sostienen que un menor de siete años de edad se le presume concluyentemente que no puede ser culpable de negligencia contributoria, y que entre las edades de siete a catorce años existe una presunción refutable de incapacidad, otras sostienen por el contrario que hasta un menor de siete años puede ser negligente, debiendo tomarse en cuenta para determinarlo, su edad, talento y discreción. Una cosa es cierta, sin embargo, y que está firmemente establecida. Ella es que no se exige a los niños el mismo grado de cuidado que a un adulto. Es natural que así sea. La regla que impide una reclamación cuando el demandante fué negligente se basa en razones de orden público. No es posible, dice la jurisprudencia, permitir que un demandante recobre daños que él mismo ha contribuído a causarlos. Ello sería un aliciente peligroso. La razón de la regla deja de existir cuando la persona no tiene el suficiente discernimiento para darse cuenta del peligro que corre. La verdadera cuestión a resolver en este caso es si el demandante ejercitó el mismo grado de cuidado que acostumbran observar los niños prudentes de la misma edad e inteligencia en casos semejantes. En otras palabras, si el menor se dió cuenta del peligro que corría al pararse en la vía después de estar las barreras bajas. *Rivera* v. *P. R. Drug Co.,* 32 D.P.R. 510 y *Rivera* v. *Sucrs. de L. Villamil & Co.,* 29 D.P.R. 275. Al muchacho le faltaban unos días para cumplir los ocho años de edad; estaba en segundo grado; de su declaración y de la observación personal el día de la vista hemos llegado a la conclusión de que distaba mucho de gozar de una precocidad superior a la ordinaria de niños de su edad; a pesar de que conocía el sitio por la frecuencia con que por allí transitaba, no creemos que se le deba exigir que supiera que cuando las barreras se bajan fuera para dar aviso del peligro que se corría en cualquiera de las vías del cruce. Un niño de tan corta edad pudo quizás creer que las barreras se bajaron

únicamente para el tren que pasaba. La negligencia contributoria es una defensa afirmativa. El peso de la prueba correspondía a la demandada. Y la evidencia dista mucho de convencernos de que este niño pudiera tener la discreción suficiente para ser culpable de negligencia contributoria atendidas todas las circunstancias que concurren en este caso.''

El décimo y último de los errores señalados se formula en términos generales, a saber, que la sentencia dictada es contraria a la prueba y a derecho. Ha sido por consiguiente estudiado y resuelto al estudiarse y resolverse los otros señalamientos de error. No existe. Los hechos y la ley sostienen la sentencia.

*En tal virtud, la apelación debe ser declarada sin lugar y dicha sentencia confirmada.*

El Juez Asociado Sr. Wolf está conforme con el resultado.*

El Juez Asociado Sr. De Jesús no intervino.